**WHITE & CASE LLP**        -and-        **FOX ROTHSCHILD LLP**
1155 Avenue of Americas                 (Formed in the Commonwealth of
New York, New York 10036-2787           Pennsylvania)
Telephone: (212) 819-8200               Princeton Pike Corporate Center
Facsimile: (212) 354-8113               997 Lenox Drive, Building 3
Counsel for the Plan Proponents         Lawrenceville, New Jersey 08648
Gerard H. Uzzi (No. 00516-1997)         Telephone:    (609) 896-3600
guzzi@whitecase.com                     Facsimile:    (609) 896-1469
                                        Co-counsel for the Plan Proponents
                                        Martha B. Chovanes (MC 2019)
                                        mchovanes@foxrothschild.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In re** | : **Chapter 11** |
| | : |
| **ZAIS INVESTMENT GRADE** | : **Case No. [    (   )]** |
| **LIMITED VII,** | : |
| | : |
| **Debtor.** | : |
| | : |

## ORIGINAL PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION FOR ZAIS INVESTMENT GRADE LIMITED VII PROPOSED BY GRF MASTER FUND, L.P., ANCHORAGE ILLIQUID OPPORTUNITIES OFFSHORE MASTER, L.P. AND ANCHORAGE CAPITAL MASTER OFFSHORE, LTD.

The Plan Proponents respectfully submit this Plan of Reorganization pursuant to Chapter 11, Title 11 of the United States Code, in the form annexed hereto and made a part hereof.

Dated: March 15, 2011

Proponents:

ANCHORAGE CAPITAL MASTER
OFFSHORE, LTD.
By: Anchorage Capital Group, L.L.C.
    its Investment Manager

By: _____
    Name: _____
              **KEVIN ULRICH**
            **Chief Executive Officer**

Title: _____
      KEVIN ULRICH
   Chief Executive Officer

ANCHORAGE ILLIQUID
OPPORTUNITIES OFFSHORE MASTER,
L.P.
By:  Anchorage Capital Group, L.L.C.
    its Investment Manager

By: _____
Name: _____
      KEVIN ULRICH
Title: _____
   Chief Executive Officer

GRF MASTER FUND, L.P.
By:  Anchorage Capital Group, L.L.C.
    its Investment Manager

By: _____
Name: _____
      KEVIN ULRICH
Title: _____
   Chief Executive Officer

## TABLE OF CONTENTS

Page

ARTICLE I.    DEFINITIONS AND INTERPRETATION............................................................1

   1.1.    Definitions ...................................................................................................1
   1.2.    Interpretation ...............................................................................................1
   1.3.    Application of Definitions and Rules of Construction Contained in the
        Bankruptcy Code .........................................................................................1
   1.4.    Other Terms .................................................................................................1
   1.5.    Appendices and Plan Documents ................................................................1

ARTICLE II.    CLASSIFICATION OF CLAIMS AND OLD EQUITY INTERESTS................2

   2.1.    Administrative Claims and Tax Claims ......................................................2
   2.2.    Claims and Old Equity Interests .................................................................2

ARTICLE III.    PROVISIONS FOR TREATMENT OF CLAIMS AND OLD EQUITY
             INTERESTS UNDER THE PLAN ...........................................................................3

   3.1.    Claims and Old Equity Interests .................................................................3

        (a)    Class 1 – Senior Indenture Administrative Expense Claims .......................3

             (i)    Treatment ..................................................................... 3
             (ii)    Time for Filing Indenture Administrative Expense Claims........... 3

        (b)    Class 2 – Indenture Priority Claims ...........................................................3

             (i)    Treatment ..................................................................... 3
             (ii)    Time for Filing Indenture Priority Claims ..................................... 3

        (c)    Class 3 – Senior Note Claims .....................................................................4

        (d)    Class 4 – Junior A-2 Note Claims...............................................................4

        (e)    Class 5 – Junior A-3 Note Claims...............................................................4

        (f)    Class 6 – Junior B-1 Note Claims...............................................................4

        (g)    Class 7 – Junior B-2 Note Claims...............................................................4

        (h)    Class 8 – Subordinated Claims ...................................................................4

        (i)    Class 9 – Income Note Claims....................................................................5

        (j)    Class 10 – General Unsecured Claims ........................................................5

        (k)    Class 11 – Old Equity Interests...................................................................5

ARTICLE IV.    PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS
             UNDER THE PLAN ................................................................................................5

4.1.    Unclassified Claims ...................................................................................5
4.2.    Treatment of Administrative Claims ..........................................................5

    (a)    Time for Filing Administrative Claims .............................................5

    (b)    Time for Filing Fee Claims ...............................................................6

    (c)    Allowance of Administrative Claims/Fee Claims .............................6

    (d)    Payment of Allowed Administrative Claims .....................................6

    (e)    Allowance and Satisfaction of Claims for Fees and Expenses of the
        Plan Proponents ...............................................................................6

4.3.    Treatment of Tax Claims ...........................................................................7

    (a)    Time for Filing Tax Claims ..............................................................7

    (b)    Payment of Allowed Tax Claims ......................................................7

    (c)    Injunction Prohibiting Holders of Tax Claims from Seeking Payment
        from Certain Third Parties .................................................................7

ARTICLE V.    MEANS FOR IMPLEMENTATION OF THE PLAN .........................................7

5.1.    Operations Between the Confirmation Date and the Effective Date....................7
5.2.    NewCo .......................................................................................................7

    (a)    Formation ..........................................................................................7

    (b)    Transfer of the Debtor's Assets In Exchange For the New LP Interest.......8

    (c)    General Partner and Investment Manager of NewCo. ...............................8

5.3.    Post-Effective Date Corporate Governance ...........................................8
5.4.    Dissolution of the Debtor ..........................................................................8
5.5.    Corporate Action .......................................................................................8
5.6.    Causes of Action .......................................................................................9
5.7.    Investment of Funds Held by the Plan Administrator ............................9

ARTICLE VI.    PLAN DISTRIBUTION PROVISIONS .......................................................9

6.1.    Plan Distributions .....................................................................................9
6.2.    Timing of Plan Distributions ..................................................................10
6.3.    Sources of Cash for Plan Distributions ..................................................10
6.4.    Address for Delivery of Plan Distributions/Unclaimed Plan Distributions ........10
6.5.    Time Bar to Cash Payments ...................................................................11
6.6.    Manner of Payment under the Plan ........................................................11
6.7.    Denomination of Foreign Currency ........................................................11
6.8.    Fractional Plan Distributions ..................................................................11

6.9.     Termination of Indenture, Notes, Certificates and Instruments and
         Continued Transferability of the Senior Notes .................................................... 11

ARTICLE VII.   PROCEDURES FOR RESOLVING AND TREATING CONTESTED
               CLAIMS ................................................................................................ 12

7.1.     Objection Deadline .................................................................................... 12
7.2.     Prosecution of Contested Claims ............................................................... 12
7.3.     Claims Settlement ..................................................................................... 12
7.4.     Entitlement to Plan Distributions upon Allowance ..................................... 12
7.5.     Estimation of Claims ................................................................................. 12

ARTICLE VIII.  CONDITIONS PRECEDENT TO THE OCCURRENCE OF THE
               EFFECTIVE DATE .............................................................................. 13

8.1.     Conditions Precedent to the Occurrence of the Effective Date ..................... 13
8.2.     Waiver of Conditions ................................................................................ 13
8.3.     Effect of Non-Occurrence of the Effective Date ......................................... 13

ARTICLE IX.    THE PLAN ADMINISTRATOR ...................................................... 14

9.1.     Powers and Duties ..................................................................................... 14
9.2.     Fees and Expenses of the Plan Administrator ............................................. 14
9.3.     Exculpation of the Plan Administrator ....................................................... 14

ARTICLE X.     TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
               LEASES ................................................................................................ 14

10.1.    Assumption and Rejection of Executory Contracts and Unexpired Leases ........ 14
10.2.    Cure ......................................................................................................... 16
10.3.    Claims Arising from Rejected Contracts ..................................................... 16

ARTICLE XI.    RETENTION OF JURISDICTION ..................................................... 17

ARTICLE XII.   MISCELLANEOUS PROVISIONS .................................................... 17

12.1.    Substantial Consummation ........................................................................ 17
12.2.    Payment of Statutory Fees ......................................................................... 17
12.3.    Discharge of the Debtor ............................................................................. 17
12.4.    Indemnification Obligations ...................................................................... 17
12.5.    Releases by the Debtor .............................................................................. 18
12.6.    Exculpation .............................................................................................. 18
12.7.    Injunctions ............................................................................................... 18
12.8.    Notices ..................................................................................................... 19
12.9.    Headings ................................................................................................... 20
12.10.   Governing Law .......................................................................................... 20
12.11.   Expedited Determination ........................................................................... 20
12.12.   Exemption from Transfer Taxes ................................................................. 20
12.13.   Notice of Entry of Confirmation Order and Relevant Dates .......................... 21
12.14.   Modification of the Plan ............................................................................ 21
12.15.   Revocation of Plan .................................................................................... 21
12.16.   Setoff Rights ............................................................................................. 21
12.17.   Compliance with Tax Requirements ........................................................... 21

12.18.    Dissolution of the Creditors' Committee (If Any) ..............................................21
12.19.    Binding Effect ....................................................................................................22
12.20.    Conflict between Plan, Disclosure Statement and Plan Documents ...................22
12.21.    Severability.........................................................................................................22
12.22.    No Admissions ....................................................................................................22

## **EXHIBITS**

GLOSSARY OF DEFINED TERMS..............................................................................EXHIBIT A

SCHEDULE OF ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED
LEASES...................................................................................................................EXHIBIT B

SCHEDULE OF DESIGNATED ASSETS..................................................................EXHIBIT C

FORM OF NEWCO LIMITED PARTNERSHIP AGREEMENT ..............................EXHIBIT D

FORM OF NEWCO INVESTMENT MANAGEMENT AGREEMENT ....................EXHIBIT E

GRF Master Fund, L.P., Anchorage Illiquid Opportunities Offshore Master, L.P. and Anchorage Capital Master Offshore, Ltd. (collectively, the "Plan Proponents"), hereby propose the following Plan of Reorganization for the resolution of all outstanding Claims against and Old Equity Interests in ZAIS Investment Grade Limited VII ("Zing VII"), the Debtor and Debtor in Possession in the Chapter 11 Case that may be commenced in the Bankruptcy Court:

## ARTICLE I.

## DEFINITIONS AND INTERPRETATION

### 1.1.  Definitions.

The capitalized terms used herein shall have the respective meanings set forth in the Glossary of Defined Terms attached hereto as Exhibit A.

### 1.2.  Interpretation.

Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of or exhibit to the Plan, as the same may be amended, waived or modified from time to time.  Words denoting the singular number shall include the plural number and vice versa, as appropriate and words denoting one gender shall include the other gender. The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

### 1.3.  Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan, unless a different definition is given in the Glossary of Defined Terms.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan; provided, however, that "or" is disjunctive.  The words "include" and "including" are without limitation.

### 1.4.  Other Terms.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.

### 1.5.  Appendices and Plan Documents.

All appendices, schedules and exhibits to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. All Plan Documents shall be filed with the Bankruptcy Court not less than ten (10) days prior to the commencement of the Confirmation Hearing.  Holders of Claims and Equity Interests may

obtain a copy of the Plan Documents, once filed, at the website maintained by the Bankruptcy Court at http://www.njb.uscourts.gov/ or by a written request sent to the following address:

Epiq Bankruptcy Solutions, LLC
Zing VII
757 Third Avenue, Third Floor
New York, NY 10017.

### ARTICLE II.

### <u>CLASSIFICATION OF CLAIMS AND OLD EQUITY INTERESTS</u>

For the purposes of organization, voting and all confirmation matters, <u>except</u> as otherwise provided herein, all Claims against and all Old Equity Interests in the Debtor shall be classified as set forth in this Article II.

**2.1.**　**<u>Administrative Claims and Tax Claims.</u>**

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Claims shall not be classified under the Plan, and shall instead be treated separately as unclassified Claims on the terms set forth in Article IV herein.

**2.2.**　**<u>Claims and Old Equity Interests.</u>**

The classes of Claims against and Old Equity Interests in the Debtor shall be classified under the Plan as follows:

<u>Class 1 – Senior Indenture Administrative Expense Claims</u>.  Class 1 shall consist of all Senior Indenture Administrative Expense Claims.

<u>Class 2 – Indenture Priority Claims</u>.  Class 2 shall consist of all Indenture Priority Claims.

<u>Class 3 – Senior Note Claims</u>.  Class 3 shall consist of all Senior Note Claims.

<u>Class 4 – Junior A-2 Note Claims</u>.  Class 4 shall consist of all Junior A-2 Note Claims.

<u>Class 5 – Junior A-3 Note Claims</u>.  Class 5 shall consist of all Junior A-3 Note Claims.

<u>Class 6 – Junior B-1 Note Claims</u>.  Class 6 shall consist of all Junior B-1 Note Claims.

<u>Class 7 – Junior B-2 Note Claims</u>.  Class 7 shall consist of all Junior B-2 Note Claims.

<u>Class 8 – Subordinated Claims</u>.  Class 8 shall consist of all Subordinated Claims.

<u>Class 9 – Income Note Claims</u>.  Class 9 shall consist of all Income Note Claims.

<u>Class 10 – General Unsecured Claims</u>. Class 10 shall consist of all General Unsecured Claims.

2

Class 11 – Old Equity Interests.  Class 11 shall consist of all Old Equity Interests.

## ARTICLE III.

## PROVISIONS FOR TREATMENT OF CLAIMS
## AND OLD EQUITY INTERESTS UNDER THE PLAN

**3.1.    Claims and Old Equity Interests.**

The classes of Claims against the Debtor and Old Equity Interests in the Debtor shall be treated under the Plan as follows:

(a)    Class 1 – Senior Indenture Administrative Expense Claims

(i)    Treatment

Senior Indenture Administrative Expense Claims are not impaired.  Holders of Senior Indenture Administrative Expense Claims are therefore not entitled to vote on the Plan and are deemed to have accepted the Plan.  On each Quarterly Plan Distribution Date through the Termination Date, each holder of an Allowed Senior Indenture Administrative Expense Claim shall receive Cash in the amount of such holder's Allowed Senior Indenture Administrative Expense Claim.  For the avoidance of doubt, in no event shall the aggregate amount of Allowed Senior Indenture Administrative Expense Claims exceed the Indenture Administrative Expense Cap on each Quarterly Plan Distribution Date.

(ii)    Time for Filing Indenture Administrative Expense Claims

Each holder of an Indenture Administrative Expense Claim must file with the Bankruptcy Court and serve on the Debtor, the Plan Proponents, the Creditors' Committee (if any) and the Office of the United States Trustee, a proof of Claim evidencing its Indenture Administrative Expense Claim within forty-five (45) days after service or publication of the Notice of Confirmation or such other date established by the Bankruptcy Court in the Confirmation Order. **Failure to file and serve such proof of Claim timely and properly shall result in the Indenture Administrative Expense Claim being forever barred from assertion against the Debtor and its Estate.**

(b)    Class 2 – Indenture Priority Claims

(i)    Treatment

Indenture Priority Claims are not impaired.  Holders of Indenture Priority Claims are therefore not entitled to vote on the Plan and are deemed to have accepted the Plan.  On the Plan Distribution Date, each holder of an Allowed Indenture Priority Claim shall receive the amount of such holder's Allowed Indenture Priority Claim, including any interest to which such holder is legally, contractually or equitably entitled in one Cash payment.

(ii)    Time for Filing Indenture Priority Claims

Each holder of an Indenture Priority Claim must file with the Bankruptcy Court and serve on the Debtor, the Plan Proponents, the Creditors' Committee (if any) and the Office of the United States Trustee, a proof of Claim evidencing its Indenture Priority Claim within forty-five (45) after service or publication of the Notice of Confirmation or such other date established by the Bankruptcy Court in the Confirmation Order. **Failure to file and serve such proof of Claim timely and properly shall result in the Indenture Priority Claim being forever barred from assertion against the Debtor and its Estate.**

(c)    Class 3 – Senior Note Claims.

Senior Note Claims are impaired under the Plan, and holders of such Claims are entitled to vote to accept or reject the Plan. On each Senior Note Plan Distribution Date, each holder of an Allowed Senior Note Claim shall receive its Pro Rata Share of Available Cash.

(d)    Class 4 – Junior A-2 Note Claims.

Junior A-2 Note Claims are impaired under the Plan. Holders of Junior A-2 Note Claims are not entitled to vote and are deemed to reject the Plan. Each holder of a Junior A-2 Note Claim shall not receive any property under the Plan.

(e)    Class 5 – Junior A-3 Note Claims.

Junior A-3 Note Claims are impaired under the Plan. Holders of Junior A-3 Note Claims are not entitled to vote and are deemed to reject the Plan. Each holder of a Junior A-3 Note Claim shall not receive any property under the Plan.

(f)    Class 6 – Junior B-1 Note Claims.

Junior B-1 Note Claims are impaired under the Plan. Holders of Junior B-1 Note Claims are not entitled to vote and are deemed to reject the Plan. Each holder of a Junior B-1 Note Claim shall not receive any property under the Plan.

(g)    Class 7 – Junior B-2 Note Claims.

Junior B-2 Note Claims are impaired under the Plan. Holders of Junior B-2 Note Claims are not entitled to vote and are deemed to reject the Plan. Each holder of a Junior B-2 Note Claim shall not receive any property under the Plan.

(h)    Class 8 – Subordinated Claims.

Subordinated Claims are impaired under the Plan. Holders of Subordinated Claims are not entitled to vote and are deemed to reject the Plan. Each holder of a Subordinated Claim shall not receive any property under the Plan.

(i)    Class 9 – Income Note Claims.

Income Note Claims are impaired under the Plan.  Holders of Income Note Claims are not entitled to vote and are deemed to reject the Plan.  Each holder of an Income Note Claim shall not receive any property under the Plan.

(j)    Class 10 – General Unsecured Claims.

General Unsecured Claims are impaired under the Plan.  Holders of General Unsecured Claims are not entitled to vote and are deemed to reject the Plan.  Each holder of a General Unsecured Claim shall not receive any property under the Plan.

(k)    Class 11 – Old Equity Interests.

Old Equity Interests are impaired under the Plan.  Holders of Old Equity Interests are not entitled to vote and are deemed to reject the Plan.  Each holder of an Old Equity Interest shall not receive any property under the Plan.

## ARTICLE IV.

## PROVISIONS FOR TREATMENT
## OF UNCLASSIFIED CLAIMS UNDER THE PLAN

**4.1.    Unclassified Claims.**

Administrative Claims and Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively.  Such Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code.

**4.2.    Treatment of Administrative Claims.**

All Administrative Claims shall be treated as follows:

(a)    Time for Filing Administrative Claims.

Each holder of an Administrative Claim, other than (i) a Fee Claim, (ii) a liability incurred and payable in the ordinary course of business by the Debtor (and not past due) or (iii) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtor, the Plan Proponents, the Creditors' Committee (if any) and the Office of the United States Trustee, an Administrative Claim request pursuant to Local Rule 3003-2(b) within forty-five (45) days after service or publication of the Notice of Confirmation or such other date established by the Bankruptcy Court in the Confirmation Order.  Such Administrative Claim request must include at a minimum (i) the name of the holder of the Administrative Claim, (ii) the amount of the Administrative Claim and (iii) the basis of the Administrative Claim.  **Failure to file and serve such request timely and properly shall result in the Administrative Claim being forever barred from assertion against the Debtor and its Estate.**

5

(b)    <u>Time for Filing Fee Claims</u>.

<u>Except</u> as otherwise provided herein, each Professional Person who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after service or publication of the Notice of Confirmation or such other date established by the Bankruptcy Court in the Confirmation Order.  **The failure to timely file and serve such Fee Application shall result in the Fee Claim being forever barred from assertion against the Debtor and its Estate.**

(c)    <u>Allowance of Administrative Claims/Fee Claims</u>.

An Administrative Claim with respect to which a request has been properly filed and served pursuant to Section 4.2(a) herein shall become an Allowed Administrative Claim if no objection is filed within sixty (60) days after the later of (i) the Effective Date, (ii) the date of service of the applicable Administrative Claim request or (iii) such later date as may be (A) agreed to by the holder of such Administrative Claim or (B) approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing.  If an objection is filed within such 60-day period (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by a Final Order.  A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 4.2(b) shall become an Allowed Administrative Claim only to the extent allowed by order of the Bankruptcy Court.

(d)    <u>Payment of Allowed Administrative Claims</u>.

On the Plan Distribution Date, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Administrative Claim in one Cash payment or (ii) such other treatment as may be agreed upon in writing by the Plan Proponents or Plan Administrator and such holder; <u>provided</u>, that such agreed-upon treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Claim; <u>provided</u>, <u>further</u>, that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtor may be paid at the Debtor's election in the ordinary course of business.

(e)    <u>Allowance and Satisfaction of Claims for Fees and Expenses of the Plan Proponents.</u>

Notwithstanding anything contained herein to the contrary, on the Effective Date, the Plan Administrator shall reimburse the Plan Proponents for all reasonable fees and out-of-pocket expenses incurred by the Plan Proponents through the Effective Date, <u>including</u>, without limitation, fees and expenses of attorneys (including White & Case LLP and Fox Rothschild LLP), financial advisors (including Houlihan Lokey) and other professionals and agents (including Epiq Bankruptcy Solutions, LLC), in each case to the extent not reimbursed on or prior to the Effective Date, without the necessity of filing a fee application or any other application of any kind or nature with the Bankruptcy Court.

**4.3.**   **Treatment of Tax Claims**.

All Tax Claims shall be treated as follows:

(a)   Time for Filing Tax Claims.

Each holder of a Tax Claim shall file with the Bankruptcy Court and serve on the Debtor, the Plan Proponents, the Creditors' Committee (if any) and the Office of the United States Trustee, a proof of Claim evidencing such Tax Claim within forty-five (45) days after service or publication of the Notice of Confirmation or such other date established by the Bankruptcy Court in the Confirmation Order.   **Failure to file and serve such request timely and properly shall result in the Tax Claim being forever barred from assertion against the Debtor and its Estate.**

(b)   Payment of Allowed Tax Claims.

On the Plan Distribution Date, each holder of an Allowed Tax Claim shall receive (i) the amount of such holder's Allowed Tax Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by the Plan Proponents or Plan Administrator and such holder; provided, that such agreed-upon treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Tax Claim.

(c)   Injunction Prohibiting Holders of Tax Claims from Seeking Payment from Certain Third Parties.

The Confirmation Order shall enjoin any holder of an Allowed Tax Claim from commencing or continuing any action or proceeding against any responsible person, officer or director of the Debtor that otherwise would be liable to such holder for payment of a Tax Claim so long as the Debtor is in compliance with this Section.   So long as the holder of an Allowed Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person, officer or director under this Section or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1.**   **Operations Between the Confirmation Date and the Effective Date**.

During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to operate its business as Debtor in Possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

**5.2.**   **NewCo**.

(a)   Formation.

On or prior to the Effective Date, the Plan Proponents shall form NewCo as an exempted limited partnership organized under the laws of the Cayman Islands.

(b)    <u>Transfer of the Debtor's Assets In Exchange For the New LP Interest</u>.

On the Effective Date, the Debtor shall transfer title to the Designated Assets to NewCo free and clear of all liens, Claims, Causes of Action, interests, security interests and other encumbrances without further order of the Bankruptcy Court.  In exchange for the transfer of the Designated Assets, NewCo shall transfer to the Debtor (i) on the Effective Date, the New LP Interest and (ii) on or after the Effective Date, Cash sufficient to fund the Debtor's senior obligations under the Plan, but solely to the extent that the Debtor's Cash on the Effective Date and projected Cash distributions from the New LP Interest are not sufficient to fund such obligations when due.

(c)    <u>General Partner and Investment Manager of NewCo</u>.

From and after the Effective Date, NewCo's operation shall be managed by the General Partner.  The General Partner shall delegate to the Investment Manager the authority to liquidate the Designated Assets and to distribute the corresponding proceeds pursuant to the Limited Partnership Agreement.

**5.3.    <u>Post-Effective Date Corporate Governance</u>.**

On the Effective Date, the authority of the Debtor's directors, officers and administrator shall be terminated to the extent permitted by applicable law.  The Plan Administrator shall succeed to such powers as would have been applicable to the Debtor's officers, directors and shareholders; <u>provided</u> that the Plan Administrator may continue to consult with any of the directors to the extent required to comply with applicable law or other contractual provisions of the Debtor's or NewCo's documents.

**5.4.    <u>Dissolution of the Debtor</u>.**

On the Termination Date, the Debtor shall be deemed dissolved for all purposes to the fullest extent permitted under applicable Cayman law, and, to the extent necessary, the Plan Administrator may take any actions required under applicable law to accomplish the dissolution of the Debtor.

**5.5.    <u>Corporate Action</u>.**

The entry of the Confirmation Order shall constitute authorization for NewCo and authorization and direction for the Debtor and their respective directors, officers, partners, stockholders and agents to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including any action required to implement (a) the issuance of the New LP Interest, (b) the adoption of the NewCo Constituent Documents, (c) the incurrence of all obligations contemplated by the Plan and the making of Plan Distributions,

(d) the implementation of all settlements and compromises as set forth in or contemplated by the Plan and (e) the execution and deliverance of all agreements, documents, instruments, notices and certificates as are contemplated by the Plan.

**5.6.    Causes of Action.**

Except as otherwise provided in the Plan, (a) all Causes of Action of the Debtor and its Estate shall, upon the occurrence of the Effective Date, be transferred to, and be vested in, NewCo and (b) the rights of NewCo to commence, prosecute or settle such Causes of Action, in its sole discretion, shall be preserved notwithstanding the occurrence of the Effective Date.

No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that NewCo will not pursue any and all available Causes of Action against them.   NewCo expressly reserves all rights to prosecute any and all Causes of Action against any Person, except as otherwise provided herein. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled herein or a Final Order, NewCo expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, issue preclusion, claim preclusion, estoppel (collateral, judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan.

**5.7.    Investment of Funds Held by the Plan Administrator.**

The Plan Administrator may, but shall not be required to, invest any funds held by the Debtor or the Plan Administrator on behalf of the Debtor pending the distribution of such funds pursuant to the Plan in investments that are exempt from federal, state and local taxes.  Further, the Plan Administrator may, but shall not be required to, invest any funds held by the Debtor or the Plan Administrator on behalf of the Debtor in interest-bearing accounts or certificates.

## ARTICLE VI.

## PLAN DISTRIBUTION PROVISIONS

**6.1.    Plan Distributions.**

Except as otherwise set forth herein, all Plan Distributions shall be made on the Plan Distribution Date, each Quarterly Plan Distribution Date or each Senior Note Plan Distribution Date, as applicable, free and clear of all liens, Claims, Causes of Action, interests, security interests and other encumbrances.  In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due.  For federal income tax purposes, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest (if any).  Except as otherwise provided herein, Plan Distributions shall be made to the holders of Allowed Claims as reflected in the registry of claims as of the Effective Date.  The Plan Administrator and its agents shall have no obligation to recognize any transfer of a Claim after the Effective Date and shall be

permitted to treat DTC, which is the sole registered holder of the Senior Notes as the sole "holder" of a Senior Note Claim on and after the Effective Date.  If necessary or convenient, the Plan Administrator may enter into, on behalf of the Debtor, a paying agency agreement to facilitate payments through DTC.

**6.2.    Timing of Plan Distributions.**

Each Plan Distribution shall be made on a Plan Distribution Date, a Quarterly Plan Distribution Date or a Senior Note Plan Distribution Date, as applicable, and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

**6.3.    Sources of Cash for Plan Distributions.**

All Cash necessary for the Plan Administrator to make payments and Plan Distributions shall be obtained from the Debtor's Cash on the Effective Date, Cash received as distributions on account of the New LP Interest and, if necessary, Cash received from NewCo under the Exit Facility.

**6.4.    Address for Delivery of Plan Distributions/Unclaimed Plan Distributions.**

Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim other than an Allowed Senior Note Claim (distributions to which shall be made in accordance with Section 6.6 herein) shall be made at the address of such holder as set forth (a) in the Schedules, if any, or the Debtor's records, (b) on the proof of Claim filed by such holder, (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e) or (d) in any notice served by such holder giving details of a change of address.  If any Plan Distribution is returned to the Plan Administrator as undeliverable, no Plan Distributions shall be made to such holder unless the Plan Administrator is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned.  After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distribution shall be treated as Available Cash and distributed in accordance with Section 3.1 herein.

**6.5.** **Time Bar to Cash Payments.**

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Plan Administrator by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within one hundred and eighty (180) days after the date of issuance of such check. If no request is made as provided in the preceding sentence, any claims in respect of such voided check shall be discharged and forever barred and such unclaimed Plan Distribution shall be treated as Available Cash and distributed in accordance with Section 3.1 herein.

**6.6.** **Manner of Payment under the Plan.**

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made at the option of the Plan Administrator by check drawn on a domestic bank or by wire transfer from a domestic bank. Cash payments to foreign creditors may be, in addition to the foregoing, made at the option of the Plan Administrator in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. The Plan Administrator shall cause all Plan Distributions in respect of the Senior Note Claims to be paid to DTC for payment to the Senior Noteholders similar to the manner in which the Debtor previously made payments on the Senior Notes.

**6.7.** **Denomination of Foreign Currency.**

Where a Claim has been denominated in foreign currency on a proof of Claim, the Allowed amount of such Claim shall be calculated in legal tender of the United States based upon the conversion rate in place as of the Petition Date and in accordance with section 502(b) of the Bankruptcy Code.

**6.8.** **Fractional Plan Distributions.**

Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractions of dollars will be made. Fractions of dollars shall be rounded to the nearest whole dollar (with any amount equal to or less than one-half dollar to be rounded down).

**6.9.** **Termination of Indenture, Notes, Certificates and Instruments and Continued Transferability of the Senior Notes.**

On the Effective Date, the Indenture and all certificates, instruments and notes governed by the Indenture shall be automatically terminated, and instead holders of such certificates, instruments and notes shall be limited solely to the rights granted under the Plan; provided, however, that notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date, (i) any certificates, instruments or notes governed by the Indenture shall continue to represent the right, if any, to participate in Plan Distributions and (ii) the Senior Notes shall continue in effect solely for purposes of allowing holders of Senior Note Claims to receive Plan Distributions as though the Senior Notes remained outstanding, subject to the terms of (a) section 2.12 of the Indenture which restricts ownership and transferability and specifies the enforcement

11

rights of the Debtor as described in section VI.D.8 of the Disclosure Statement and (b) section 2.2 of the Indenture which designates DTC as the registered holder of the Senior Notes held in global form to receive payment on behalf of the Senior Noteholders, both of which are incorporated by reference into the Plan.  On the final Senior Note Plan Distribution Date, the registered holder of the Senior Notes shall surrender the Senior Notes in exchange for the final Plan Distributions made on account of the Senior Notes.

# ARTICLE VII.

## PROCEDURES FOR RESOLVING
## AND TREATING CONTESTED CLAIMS

**7.1.    Objection Deadline.**

Except as otherwise provided in the Plan, as soon as practicable, but in no event later than one hundred and twenty (120) days after the Confirmation Date (subject to being extended by the order of the Bankruptcy Court upon motion of the Plan Administrator without notice or a hearing), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

**7.2.    Prosecution of Contested Claims.**

The Plan Administrator may object to the allowance of Claims with the Bankruptcy Court with respect to which liability is disputed in whole or in part.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 7.3 herein.

**7.3.    Claims Settlement.**

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Plan Administrator shall have authority to settle or compromise all Claims and Causes of Action against the Debtor without further review or approval of the Bankruptcy Court.

**7.4.    Entitlement to Plan Distributions upon Allowance.**

Notwithstanding any other provision of the Plan, no Plan Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim, subject to the setoff rights provided in Section 12.16 herein.  When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when), the holder of such Allowed Claim shall thereupon become entitled to receive Plan Distributions in respect of such Claim in the same manner as if such Claim had been an Allowed Claim on the Effective Date.

**7.5.    Estimation of Claims.**

The Plan Proponents or the Plan Administrator may, at any time, request that the Bankruptcy Court estimate any Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection has been filed with respect to such Claim or whether the

Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Contested Claim, that estimated amount will constitute the Allowed amount of such Claim for all purposes under the Plan.  All of the objection, estimation, settlement and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE VIII.

## CONDITIONS PRECEDENT TO
## THE OCCURRENCE OF THE EFFECTIVE DATE

**8.1.**    **Conditions Precedent to the Occurrence of the Effective Date.**

The following are conditions precedent to the occurrence of the Effective Date:

(a)    the Confirmation Order shall have been entered by the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction;

(b)    all necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan;

(c)    the Confirmation Order, the Plan, the Plan Documents and all other definitive documentation shall be in form and substance satisfactory to the Plan Proponents;

(d)    all actions, documents and agreements necessary to implement the Plan and the transactions contemplated by the Plan shall have been effected or executed; and

(e)    the New LP Interest to be issued by NewCo under the Plan shall have been duly authorized and, upon issuance, shall be validly issued and outstanding.

**8.2.**    **Waiver of Conditions.**

The Plan Proponents may waive any one or more of the conditions set forth in Section 8.1 (other than Section 8.1(a)) without notice or order of the Bankruptcy Court and without notice to other parties in interest.

**8.3.**    **Effect of Non-Occurrence of the Effective Date.**

If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Old Equity Interests in the Debtor; (b) prejudice in any manner the rights of the Debtor or the Plan Proponents; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtor or the Plan Proponents.

## ARTICLE IX.

## THE PLAN ADMINISTRATOR

**9.1.    Powers and Duties.**

Pursuant to the terms and provisions of the Plan, the Plan Administrator shall be empowered to (a) take all steps and execute all instruments and documents necessary to make Plan Distributions to holders of Allowed Claims; (b) comply with the Plan and the obligations thereunder; (c) employ, retain or replace professionals to represent it with respect to its responsibilities; (d) object to Claims as specified in Article VII and prosecute such objections; (e) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment or Allowance of any Claim as provided in Article VII; (f) make any required periodic reports; and (g) exercise such other powers as may be vested in the Plan Administrator pursuant to the Plan, the Plan Documents or an order of the Bankruptcy Court.

**9.2.    Fees and Expenses of the Plan Administrator.**

Notwithstanding anything contained herein to the contrary, the amount of any reasonable fees and expenses incurred (or to be incurred) by the Plan Administrator (including, but not limited to, taxes) shall be paid when due prior to any Plan Distributions in respect of Senior Indenture Administrative Expense Claims, Indenture Priority Claims or Senior Note Claims. Professional fees and expenses incurred by the Plan Administrator from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of business. Any dispute regarding compensation shall be resolved by agreement of the parties, or if the parties are unable to agree, as determined by the Bankruptcy Court.

**9.3.    Exculpation of the Plan Administrator.**

**Except as otherwise provided in this Section, the Plan Administrator, together with its officers, directors, employees, members, managers, professionals, affiliates, partners, agents and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and Old Equity Interests and all other parties in interest, from any and all Causes of Action arising out of the exercise of the powers and duties conferred upon the Plan Administrator by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan or applicable law, except solely for actions or omissions arising out of the Plan Administrator's willful misconduct or gross negligence. Nothing contained in this Section shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court against the Debtor or the Plan Administrator to compel the making of Plan Distributions contemplated by the Plan on account of such Claim.**

## ARTICLE X.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.1.    Assumption and Rejection of Executory Contracts and Unexpired Leases.**

(a)    All executory contracts and unexpired leases of the Debtor shall be rejected pursuant to the provisions of section 365 of the Bankruptcy Code effective as of and subject to

the occurrence of the Effective Date, unless another date is specified in the Plan except: (i) the Designated Assets to the extent such Designated Assets are executory; (ii) contracts and leases listed on a "Schedule of Assumed Executory Contracts and Unexpired Leases" to be filed by the Plan Proponents with the Bankruptcy Court fifteen (15) Business Days prior to commencement of the Confirmation Hearing as Exhibit B hereto; (iii) any executory contract or unexpired lease that is the subject of a dispute over the amount or manner of cure pursuant to the next section hereof and for which the Debtor or Plan Administrator make a motion to reject such contract or lease based upon the existence of such dispute filed at any time; and (iv) any agreement, obligation, security interest, transaction or similar undertaking that the Plan Proponents believe is not executory or a lease that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease that is subject to assumption or rejection under section 365 of the Bankruptcy Code. Any order entered post-confirmation by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered preconfirmation. The Plan Proponents reserve the right to amend the "Schedule of Assumed Executory Contracts and Unexpired Leases" prior to the entry of the Confirmation Order. Each executory contract and unexpired lease to be assumed by the Debtor shall include modifications, amendments, supplements, restatements or other similar agreements made directly or indirectly by any agreement, instrument or other document that affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the "Schedule of Assumed Executory Contracts and Unexpired Leases."

(b)     The inclusion of a contract, lease or other agreement in Section 10.1(a) or on the "Schedule of Assumed Executory Contracts and Unexpired Leases" shall not constitute an admission by the Plan Proponents as to the characterization of whether any such included contract, lease or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease or other agreement are time-barred from asserting Claims against the Debtor. The Plan Proponents reserve all rights with respect to the characterization of any such agreements.

(c)     The Plan shall constitute a motion to reject the Debtor's executory contracts and unexpired leases in accordance with this Section 10.1, and the Debtor shall have no liability thereunder except as is specifically provided in the Plan. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code, subject to the occurrence of the Effective Date, and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtor and its Estate.

(d)     The Plan shall constitute a motion to assume and assign to NewCo, such executory contracts and unexpired leases as set forth in the "Schedule of Assumed Executory Contracts and Unexpired Leases." Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption and assignment pursuant to sections 365(a), (b) and (f) of the Bankruptcy Code, and a finding by the Bankruptcy Court that the requirements of section 365(f) of the Bankruptcy Code have been satisfied. Any non-Debtor counterparty to an agreement listed on the "Schedule of Assumed Executory Contracts and Unexpired Leases" or any other contract or unexpired lease otherwise designated as being assumed or assumed and assigned in Section 10.1(a) who disputes the assignment of an

15

executory contract or unexpired lease must file with the Bankruptcy Court, and serve upon the Plan Proponents, a written objection to the assumption and assignment, which objection shall set forth the basis for the dispute by no later than five (5) Business Days prior to the commencement of the Confirmation Hearing. The failure to timely object shall be deemed a waiver of any and all objections to the assumption and assignment of executory contracts and leases as set forth in the "Schedule of Assumed Executory Contracts and Unexpired Leases" or as otherwise designated as being assumed or assumed and assigned in Section 10.1(a).

**10.2. <u>Cure</u>.**

At the election of the Plan Proponents, any monetary defaults under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Effective Date or as soon thereafter as practicable; or (b) on such other terms as agreed upon in writing by the Plan Proponents or the Plan Administrator and the counter-party to such executory contract or unexpired lease. In the event of a dispute regarding: (i) the amount of any cure payments; (ii) the ability to provide adequate assurance of future performance under the contract or lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to assumption or assumption and assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable. The "Schedule of Assumed Executory Contracts and Unexpired Leases" shall set forth the Debtor's cure obligations for each agreement for which cure obligations must be satisfied as a condition to the assumption and assignment of such agreement. Any non-Debtor counterparty to an agreement listed on the "Schedule of Assumed Executory Contracts and Unexpired Leases" who disputes the scheduled cure obligation (or objects to the omission of a scheduled cure obligation) must file with the Bankruptcy Court, and serve upon the Plan Proponents, a written objection to the cure obligation, which objection shall set forth the basis for the dispute, the alleged correct cure obligation, and any other objection related to the assumption or assumption and assignment of the relevant agreement by no later than five (5) Business Days prior to the commencement of the Confirmation Hearing. If a non-Debtor counterparty fails to file and serve an objection which complies with the foregoing, the cure obligation set forth on the "Schedule of Assumed Executory Contracts and Unexpired Leases" shall be binding on the non-Debtor counterparty, and the non-Debtor counterparty shall be deemed to have waived any and all objections to the assumption or assumption and assignment of the relevant agreement as proposed by the Plan Proponents.

**10.3. <u>Claims Arising from Rejected Contracts</u>.**

Rejection Damage Claims must be filed with the Bankruptcy Court and served on the Debtor, the Plan Proponents, the Creditors' Committee (if any) and the Office of the United States Trustee within forty-five (45) days after service or publication of the Notice of Confirmation or such other date established by the Bankruptcy Court in the Confirmation Order. **Failure to properly file any such Rejection Damage Claim pursuant to this Section 10.3 shall result in the Rejection Damage Claim being forever barred and discharged.**

# ARTICLE XI.

## RETENTION OF JURISDICTION

On and after the Effective Date, pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under and related to the Chapter 11 Case to the fullest extent permitted by law.

# ARTICLE XII.

## MISCELLANEOUS PROVISIONS

### 12.1.   Substantial Consummation.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.2.   Payment of Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtor on or before the Effective Date.

### 12.3.   Discharge of the Debtor.

**Except as expressly provided in the Plan, upon the Termination Date, (a) each holder (as well as any trustees and agents on behalf of each holder) of a Claim against or Old Equity Interest in a Debtor shall be deemed to have forever waived, released and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Old Equity Interests, rights and liabilities that arose prior to the Effective Date and (b) all such holders shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any discharged Claim against or terminated Old Equity Interest in the Debtor.**

### 12.4.   Indemnification Obligations.

Any obligations of the Debtor to indemnify and hold harmless its current and former directors or any other parties, whether arising under the Debtor's constituent documents, contract, law or equity, shall be rejected upon the Effective Date with the same effect as though such obligations constituted executory contracts that are rejected under section 365 of the Bankruptcy Code.  On the Effective Date, the Debtor shall indemnify all of the Debtor's directors and officers who acted in such capacity on the Petition Date and continuously through the Effective Date for any liability arising from an act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in connection with (a) the filing of the involuntary Chapter 11 petition, (b) the preparation and prosecution of the Chapter 11 Case, (c) the preparation, negotiation, filing and pursuit of approval of this Disclosure Statement, (d) the preparation, negotiation, solicitation, filing and pursuit of the confirmation of the Plan, (e) the consummation of the Plan or (f) the implementation or administration of the Plan or the

17

property to be distributed under the Plan to the fullest extent permitted by law except for (i) any willful misconduct or gross negligence as determined by a Final Order and (ii) any costs or liabilities incurred in opposing any action described in subsections (a) – (f) above; <u>provided</u>, <u>however</u>, that indemnification for actual out of pocket expenses incurred prior to the Petition Date shall be limited to $250,000 in the aggregate.

**12.5.   <u>Releases by the Debtor</u>.**

**As of the Effective Date, for good and valuable consideration, the Debtor in its individual capacity and as Debtor in Possession will be deemed to release and forever waive and discharge all Causes of Action that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, NewCo, the Chapter 11 Case, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtor or its Estate against (a) the Debtor's officers, directors, administrator, agents and representatives who were acting in their capacity as such on both the Petition Date and the Effective Date, in their respective capacities as such, (b) the Trustee and its agents, attorneys and advisors, in their respective capacities as such, (c) the Plan Proponent Parties and their present and former officers, directors and employees, in their respective capacities as such and (d) each of the foregoing's respective successors and assigns and each of their respective agents, attorneys, advisors, accountants, investment bankers, bankruptcy and restructuring advisors and financial advisors, in their respective capacities as such; except, that nothing in this Section shall be construed to release any party or entity from (i) willful misconduct or gross negligence as determined by a Final Order or (ii) any objections by the Debtor or the Plan Administrator to Claims filed by such party or entity against the Debtor or its Estate.**

**12.6.   <u>Exculpation</u>.**

**None of the Exculpated Parties shall have or incur any liability to any Person for any act or omission in connection with, or arising out of, (a) the filing of the involuntary Chapter 11 petition, (b) the preparation and prosecution of the Chapter 11 Case, (c) the preparation, negotiation, filing and pursuit of approval of the Disclosure Statement, (d) the preparation, negotiation, solicitation, filing and pursuit of the confirmation of the Plan, (e) the consummation of the Plan or (f) the implementation or administration of the Plan or the property to be distributed under the Plan, except solely for any act or omission arising out of such Exculpated Party's willful misconduct or gross negligence as finally determined by the Bankruptcy Court, and, in all respects each Exculpated Party shall be entitled to rely upon the advice of counsel and all information provided by other Exculpated Parties herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under the Plan.**

**12.7.   <u>Injunctions</u>.**

The Confirmation Order will contain an injunction permanently enjoining the commencement or prosecution of certain actions, which injunction shall provide, inter alia:

18

(a)    **On the Effective Date and except as otherwise provided in the Plan or the Confirmation Order, all Persons who have been, are, or may be holders of Claims against or Old Equity Interests in the Debtor shall be permanently enjoined from taking any of the following actions against or affecting (i) the Debtor, (ii) the Estate, (iii) NewCo, (iv) the Trustee, (v) the Plan Proponent Parties, (vi) the Plan Administrator, (vii) any of the aforementioned parties' current or former officers, directors, administrators, employees, members, managers, professionals, affiliates, advisors, partners and agents and (viii) the successors and assigns of the parties listed in (i) – (vii), or their respective assets and property, with respect to such Claims or Old Equity Interests (other than actions brought to enforce any rights or obligations under the Plan):**

(i)    **commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (<u>including</u>, without limitation, all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);**

(ii)    **enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;**

(iii)    **creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and**

(iv)    **asserting any setoff, right of subrogation or recoupment of any kind; <u>provided</u>, that any defenses, offsets or counterclaims which the Debtor, NewCo or the Plan Administrator may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 5.6;**

(b)    **All Persons are permanently enjoined from commencing or continuing in any manner any Cause of Action, whether directly, derivatively, on account of or respecting any Cause of Action which has been released pursuant to the Plan, including pursuant to Sections 3.1, 4.2, 4.3, 10.3, 12.3, 12.4, 12.5 and 12.6;**

(c)    **All holders of a Claim against or an Old Equity Interest in the Debtor, or representative thereof, are permanently enjoined from pursuing any Cause of Action against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan; and**

(d)    **Notwithstanding anything to the contrary contained in the foregoing, nothing in this Section 12.7 shall preclude or impair any holder of an Allowed Claim or Allowed Old Equity Interest from bringing an action in the Bankruptcy Court against the Debtor or Plan Administrator to compel the making of Plan Distributions contemplated by the Plan on account of such Claim or Old Equity Interest.**

## 12.8.    <u>Notices</u>.

Any notices, requests and demands to or upon the Plan Proponents, in order to be effective, shall be in writing (<u>including</u>, without express or implied limitation, by facsimile

19

transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Anchorage Capital Group, L.L.C.
> 610 Broadway, 6th Floor
> New York, New York 10012
> Attention:  Yale Baron
> With copy to: Anne-Marie Kim, Esq.
>
> and
>
> White & Case LLP
> Attention:  Zing VII Restructuring
> 1155 Avenue of the Americas
> New York, New York 10036

**12.9.  Headings.**

The headings used in the Plan and the Disclosure Statement are inserted for convenience only, and neither constitutes a portion of the Plan nor in any manner affects the construction of the provisions of the Plan.

**12.10.  Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

**12.11.  Expedited Determination.**

The Plan Administrator is hereby authorized to file a request for expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtor.

**12.12.  Exemption from Transfer Taxes.**

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

**12.13.  Notice of Entry of Confirmation Order and Relevant Dates.**

Promptly upon entry of the Confirmation Order, the Plan Proponents shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and Old Equity Interests, the Notice of Confirmation and notice of all relevant deadlines and dates under the Plan, including, but not limited to, the respective deadlines for filing Administrative Claims requests, Rejection Damages Claims or proofs of Claim evidencing Senior Indenture Administrative Expense Claims and Indenture Priority Claims.

**12.14.  Modification of the Plan.**

The Plan Proponents may modify the Plan in accordance with section 1127 of the Bankruptcy Code.  Additionally, prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Old Equity Interests.

**12.15.  Revocation of Plan.**

The Plan Proponents reserve the right to revoke and withdraw the Plan and/or to adjourn the Confirmation Hearing prior to the occurrence of the Effective Date.

**12.16.  Setoff Rights.**

In the event that the Debtor has a Claim of any nature whatsoever against the holder of a Claim against the Debtor, then the Debtor may, but is not required to, setoff against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) the Debtor's Claim against such holder, subject to the provisions of sections 553, 556 and 560 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that the Debtor may have against the holder of any Claim.

**12.17.  Compliance with Tax Requirements.**

In connection with the Plan, the Debtor and the Plan Administrator, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such Plan Distribution.  The Plan Administrator has the right, but not the obligation, to not make a Plan Distribution until such holder has made arrangements satisfactory to the Plan Administrator for payment of any such tax obligations.

**12.18.  Dissolution of the Creditors' Committee (If Any).**

Upon the Effective Date, the Creditors' Committee (if any) shall dissolve automatically, whereupon its members, professionals and agents shall be released from any further duties and

responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except with respect to (a) applications for Fee Claims or reimbursement of expenses incurred as a member of the Creditors' Committee and (b) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order or pending appeals of orders entered in the Chapter 11 Cases.

**12.19.  Binding Effect.**

The Plan shall be binding upon NewCo, the Debtor, the holders of all Claims and Old Equity Interests, parties in interest, Persons and their respective successors and assigns.  The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

**12.20.  Conflict between Plan, Disclosure Statement and Plan Documents.**

(a)      Except as provided in Section 12.20(b) below, in the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Disclosure Statement, the terms and provisions of the Plan shall control and govern.

(b)      In the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Plan Documents, the terms and provisions of the Plan Documents shall control and govern.

**12.21.  Severability.**

**IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR OLD EQUITY INTEREST OR TRANSACTION, THE PLAN PROPONENTS MAY MODIFY THE PLAN IN ACCORDANCE WITH AND SUBJECT TO SECTION 12.14 HEREIN SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR OLD EQUITY INTEREST OR TRANSACTION.  SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.**

**12.22.  No Admissions.**

None of the filing of the Plan or the taking by the Debtor or the Plan Proponents of any action with respect to the Plan or any statement or provision contained herein shall be or be deemed to be an admission by any such party against interest, or be or be deemed to be a waiver of any rights, claims or remedies that such parties may have, and all such rights and remedies are and shall be specifically reserved.  In the event the Plan is not confirmed and the Confirmation Order is not entered, the Plan, the Disclosure Statement and the Plan Documents, and any statement contained herein or therein, may not be used by any Person, party or entity against the Debtor or any of the Plan Proponents.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST AND OLD EQUITY INTERESTS IN THE DEBTOR.

Dated:  March 15, 2011

Respectfully submitted,

ANCHORAGE CAPITAL MASTER
OFFSHORE, LTD.
  By:  Anchorage Capital Group, L.L.C.
      its Investment Manager

By: _____
  Name:          KEVIN ULRICH
  Title:        Chief Executive Officer

ANCHORAGE ILLIQUID OPPORTUNITIES
OFFSHORE MASTER, L.P.
  By:  Anchorage Capital Group, L.L.C.
      its Investment Manager

By: _____
  Name:          KEVIN ULRICH
  Title:        Chief Executive Officer

GRF MASTER FUND, L.P.
  By:  Anchorage Capital Group, L.L.C.
      its Investment Manager

By: _____
  Name:          KEVIN ULRICH
  Title:        Chief Executive Officer

23