**PLAN EXHIBIT A**

**GLOSSARY OF DEFINED TERMS**

## **GLOSSARY OF DEFINED TERMS**

1. "Administrative Claim" means any Claim incurred by the Debtor on or after the Petition Date and before the Effective Date for a cost or expense of administration in the Chapter 11 Case entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, Fee Claims, any actual and necessary costs and expenses of preserving the Debtor's Estate, and any actual and necessary costs and expenses of operating the Debtor's business.

2. "Affiliates" means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person was a debtor in a case under the Bankruptcy Code.

3. "Allowed," when used (a) with respect to any Claim, except for a Claim that is an Administrative Claim, means such Claim to the extent it is not a Contested Claim or a Disallowed Claim; (b) with respect to an Administrative Claim, means such Administrative Claim to the extent it has become fixed in amount and priority pursuant to the procedures set forth in Section 4.2(c) of this Plan; and (c) with respect to Old Equity Interests in the Debtor, means the Old Equity Interests as reflected in the stock transfer ledger or similar register of the Debtor as of the Effective Date.

4. "Assets" means all of the Debtor's right, title and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code.

5. "Available Cash" means all Cash of the Debtor, including all Cash received as distributions on account of the New LP Interest, less (a) Cash required to pay the fees and expenses of the Plan Administrator in accordance with Section 9.2 herein, (b) Cash reserved by the Plan Administrator, at its sole discretion, to make future Plan Distributions to holders of Administrative Claims, Tax Claims, Indenture Priority Claims and Senior Indenture Administrative Expense Claims that have not, but may, become Allowed Claims and (c) Cash required to make Plan Distributions to holders of Allowed Administrative Claims, Allowed Tax Claims, Allowed Indenture Priority Claims and Allowed Senior Indenture Administrative Expense Claims in accordance with Sections 3.1, 4.2 and 4.3 herein.

6. "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Case.

7. "Bankruptcy Court" means the United States Bankruptcy Court for the District of New Jersey, or such other court having jurisdiction over the Chapter 11 Case.

8. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and as applicable to the Chapter 11 Case.

9. "Business Day" means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business in New York, New York.

10.     "Cash" means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America.

11.     "Causes of Action" means all claims, rights, actions, causes of action, demands, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, arising in law, equity or otherwise.

12.     "Chapter 11 Case" means the case that will be commenced under chapter 11 of the Bankruptcy Code in the Bankruptcy Court with respect to the Debtor.

13.     "Claim" means (a) any right to payment, whether or not such right is known or unknown, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.  For avoidance of doubt, "Claim" includes, without limitation, a right to payment, or equitable relief that gives rise to a right to payment, that has or has not accrued under non-bankruptcy law that is created by one or more acts or omissions of the Debtor if: (a) the act(s) or omission(s) occurred before or at the time of the Effective Date; (b) the act(s) or omission(s) may be sufficient to establish liability when injuries/damages are manifested; and (c) at the time of the Effective Date, the Debtor has received one or more demands for payment for injuries or damages arising from such acts or omissions.

14.     "Claim Objection Deadline" means the deadline for filing objections to Claims as set forth in Section 7.1 herein.

15.     "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

16.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of the Plan.

17.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

18.     "Contested" (a) when used with respect to a Claim, means such Claim as to which a proof of Claim has been filed with the Bankruptcy Court, and as to which an objection was filed on or before the Claim Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or the Plan; or as to which an objection has been filed on or before the Effective Date; <u>provided</u>, that a Claim that is fixed in amount and priority pursuant to the Plan or by Final Order on or before the Effective Date shall not be a Contested Claim; and (b) when used with respect to an Equity Interest, means such Equity Interest to the extent it is not reflected on the Debtor's stock transfer ledger or similar register as of the Effective Date.

19. "Creditors' Committee" means an Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases, if any.

20. "Debtor" means ZAIS Investment Grade Limited VII.

21. "Debtor in Possession" means the Debtor, in its capacity as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

22. "Designated Assets" means the Debtor's Causes of Action (in accordance with Section 5.6 herein) and the Assets identified on Exhibit C attached hereto, which may be amended by the Plan Proponents at any time prior to the commencement of the Confirmation Hearing.

23. "Disallowed" when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order.

24. "Disclosure Statement" means the disclosure statement filed with respect to the Plan, as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules thereto.

25. "DTC" means The Depository Trust Company, its nominees and their respective successors.

26. "Effective Date" means a date selected by the Plan Proponents after all of the conditions specified in Section 8.1 of the Plan have been satisfied or waived on which the Plan shall be substantially consummated.

27. "Estate" means the estate of the Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

28. "Exculpated Parties" means the (i) Debtor, (ii) NewCo, (iii) the Trustee, (iv) the Plan Proponent Parties, (v) any of the aforementioned parties' current or former officers, directors, administrators, employees, members, managers, professionals, affiliates, advisors, partners and agents and (vi) the successors and assigns of the parties listed in (i) – (v).

29. "Exit Facility" means a credit agreement, which may be entered into by NewCo, as borrower, and the Exit Facility Lender on or after the Effective Date, which (i) shall be on terms substantially similar to those contained in the term sheet attached as Exhibit D to the Disclosure Statement if the Exit Facility Lender is an Affiliate of the investment manager of the Plan Proponents or a fund managed by the Investment Manager or (ii) shall be on market terms available at the time the Exit Facility is entered if the Exit Facility Lender is a party other than an Affiliate of the investment manager of the Plan Proponents or a fund managed by the Investment Manager, and all related documents, instruments and agreements entered into, executed or delivered in connection therewith.

30. "Exit Facility Lender" means a Person that lends to NewCo under the Exit Facility.

31. "Fee Application" means an application for allowance and payment of a Fee Claim.

32. "Fee Claim" means a Claim of a Professional Person.

33. "Final Order" means (a) an order or judgment of the Bankruptcy Court or any other court or adjudicative body of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or (b) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order in the future; provided further that the Plan Proponents or the Plan Administrator, as applicable, may waive any appeal period.

34. "General Partner" means Z-CDO Liquidation Fund GP, LLC, an affiliate of the investment manager of the Plan Proponents or such other Person designated by the Plan Proponents.

35. "General Unsecured Claim" means any Claim against the Debtor, other than an Administrative Claim, a Tax Claim, a Fee Claim, a Senior Indenture Administrative Expense Claim, an Indenture Priority Claim, a Senior Note Claim, a Junior A-2 Note Claim, a Junior A-3 Note Claim, a Junior B-1 Note Claim, a Junior B-2 Note Claim, a Subordinated Claim or an Income Note Claim.

36. "Income Notes" means those certain income notes issued by the Debtor pursuant to that certain Income Note Issuing and Paying Agency Agreement between the Debtor and JPMorgan Chase Bank, National Association (London Office), and its successors and permitted assigns, dated October 19, 2005 as amended, supplemented and otherwise modified.

37. "Income Note Claims" means all claims against the Debtor on account of the Income Notes.

38. "Indenture" means that certain Indenture agreement dated October 19, 2005 between ZAIS Investment Grade VII, as Issuer, and The Bank of New York, National Association, as successor to JPMorgan Chase Bank, National Association, as trustee and securities intermediary.

39. "Indenture Administrative Expense Cap" means an amount calculated by the Plan Administrator fifteen (15) days before each Quarterly Plan Distribution Date equal to the sum of (a) 0.04% per annum (pro rated for the related interest accrual period) of the aggregate principal balance of (i) the Designated Assets held by NewCo and (ii) the Cash held by the Debtor, excluding any Cash obtained from the Exit Facility and (b) $200,000 per annum (pro rated for the related interest accrual period).

40. "Indenture Administrative Expense Claims" means all Claims for "Administrative Expenses" as such term is used in the Indenture and is described in Section VI.B.2. of the Disclosure Statement.

41.     "Indenture Priority Claims" means all Claims to which the Senior Notes are subordinated under the Indenture, other than Senior Indenture Administrative Expense Claims, as described in Section VI.B.2 of the Disclosure Statement.

42.     "Investment Manager" means Anchorage Capital Group, L.L.C. or such other Person designated by the Plan Proponents which shall have the authority and responsibility to liquidate the Designated Assets and to distribute the corresponding proceeds to the Debtor pursuant to an investment management agreement, which shall be substantially in the form of Exhibit E hereto.

43.     "Junior A-2 Notes" means those certain Class A-2 senior secured floating rate notes issued by the Debtor pursuant to the Indenture.

44.     "Junior A-2 Note Claims" means all Claims against the Debtor on account of the Junior A-2 Notes.

45.     "Junior A-3 Notes" means those certain Class A-3 senior secured floating rate notes issued by the Debtor pursuant to the Indenture.

46.     "Junior A-3 Note Claims" means all Claims against the Debtor on account of the Junior A-3 Notes.

47.     "Junior B-1 Notes" means those certain Class B-1A senior subordinate secured floating rate notes and those certain Class B-1B senior subordinate secured fixed rate notes issued by the Debtor pursuant to the Indenture.

48.     "Junior B-1 Note Claims" means all Claims against the Debtor on account of the Junior B-1 Notes.

49.     "Junior B-2 Notes" means those certain Class B-2A senior subordinate secured floating rate notes and those certain Class B-2B senior subordinate secured fixed rate notes issued by the Debtor pursuant to the Indenture.

50.     "Junior B-2 Note Claims" means all Claims against the Debtor on account of the Junior B-2 Notes.

51.     "Junior Note Claims" means the Junior A-2 Note Claims, Junior A-3 Note Claims, Junior B-1 Note Claims and Junior B-2 Note Claims.

52.     "Junior Notes" means the Junior A-2 Notes, Junior A-3 Notes, Junior B-1 Notes and Junior B-2 Notes.

53.     "Limited Partnership Agreement" means the limited partnership agreement that will govern NewCo, which shall be substantially in the form of Exhibit D hereto.

54.     "Local Rules" means the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of New Jersey.

55. "NewCo" means the legal entity to be formed pursuant to Section 5.2 herein whose legal name shall be Z-CDO Liquidation Fund, L.P. or any other name as may be chosen by the Plan Proponents.

56. "NewCo Constituent Documents" means the organic documents for NewCo as of the Effective Date, including the Limited Partnership Agreement.  The NewCo Constituent Documents shall be in substantially the form attached to the Plan or filed with the Bankruptcy Court as Plan Documents.

57. "New LP Interest" means the limited partnership interest in NewCo.

58. "Notice of Confirmation" means the notice of entry of the Confirmation Order.

59. "Old Equity Interest" means any outstanding ownership interest in the Debtor, <u>including</u>, without limitation, interests evidenced by common or preferred stock, membership interests, options, stock appreciation rights, restricted stock, restricted stock units, or their equivalents, or other rights to purchase or otherwise receive any ownership interest in the Debtor and any right to payment or compensation based upon any such interest, whether or not such interest is owned by the holder of such right to payment or compensation.

60. "Person" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity or political subdivision thereof, or any other entity.

61. "Petition Date" means the date on which the Chapter 11 Case is commenced.

62. "Plan" means this chapter 11 plan, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules hereto, as the same may be in effect at the time such reference becomes operative.

63. "Plan Administrator" means NewCo or, after the occurrence of the Effective Date, any agent selected by NewCo, acting on behalf of the Debtor in (a) making the distributions contemplated under the Plan, the Confirmation Order, or any other relevant Final Order and (b) performing any other act or task that is or may be delegated to the Plan Administrator under the Plan.

64. "Plan Distribution" means the payment or distribution under the Plan of Cash.

65. "Plan Distribution Date" means with respect to any Claim, (a) the Effective Date or a date that is as soon as reasonably practicable after the Effective Date, if such Claim is then an Allowed Claim or (b) if not Allowed on the Effective Date, a date that is as soon as reasonably practicable after the date such Claim becomes Allowed, but is not earlier than thirty (30) days following the previous Plan Distribution Date.

66. "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.5 including, without limitation, NewCo Constituent Documents and all Exhibits to the Plan.

67. "Plan Proponents" means GRF Master Fund, L.P., Anchorage Illiquid Opportunities Offshore Master, L.P. and Anchorage Capital Master Offshore, Ltd.

68. "Plan Proponent Parties" means the Plan Proponents and their Affiliates, investment managers and general partners.

69. "Pro Rata Share" means (a) with respect to Senior Note Claims, the proportion that Allowed Senior Note Claim bears to the aggregate amount of all Senior Note Claims, including Contested Claims, but excluding Disallowed Claims, (i) as calculated by the Plan Administrator or (ii) as determined or estimated by the Bankruptcy Court and (b) with respect to Senior Indenture Administrative Expense Claims, the proportion that an Allowed Senior Indenture Administrative Expense Claim bears to the aggregate amount of all unpaid Senior Indenture Administrative Expense Claims, including Contested Claims, but excluding Disallowed Claims, (a) as calculated by the Plan Administrator or (b) as determined or estimated by the Bankruptcy Court.

70. "Professional Person" means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Case.

71. "Quarterly Plan Distribution Date" means the 15th day of January, April, July and October of each year.

72. "Rejection Damage Claim" means any Claim arising out of the rejection of an executory contract or unexpired lease.

73. "Schedules" means, unless otherwise stated, the schedules of assets and liabilities and list of Old Equity Interests and the statements of financial affairs, if any, filed by the Debtor with the Bankruptcy Court.

74. "Senior Indenture Administrative Expense Claims" means those unpaid Indenture Administrative Expense Claims that in the aggregate do not exceed the Indenture Administrative Expense Cap on each Quarterly Plan Distribution Date and which shall be Allowed and payable solely as determined by the Plan Administrator in accordance with the priority of payments set forth in the definition of "Administrative Expenses" in the Indenture and as described in Section VI.B.2 of the Disclosure Statement.

75. "Senior Notes" means those certain Class A-1A senior secured floating rate notes and those certain Class A-1B senior secured fixed rate notes issued by the Debtor pursuant to the Indenture.

76. "Senior Note Claims" means all Claims for unpaid principal, interest and fees against the Debtor held by a Senior Noteholder on account of the Senior Notes, which Claims shall be deemed Allowed by the Plan in the aggregate amount of not less than $191,086,932.

77. "Senior Note Plan Distribution Date" means, with respect to any Allowed Senior Note Claim, each date upon which the Plan Administrator elects to distribute Available Cash.

78. "Senior Noteholder" means any holder of a Senior Note.

79. "Subordinated Claims" means all Claims that are subordinated to the Senior Notes under the Indenture (including any Indenture Administrative Expense Claim that does not qualify as a Senior Indenture Administrative Expense Claim), other than Junior A-2 Note Claims, Junior A-3 Note Claims, Junior B-1 Note Claims, Junior B-2 Note Claims and Income Note Claims, as described in Section VI.B.2 of the Disclosure Statement.

80. "Tax Claim" means a Claim against the Debtor that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.

81. "Termination Date" means the date where (i) the Debtor has distributed all its Cash, (ii) NewCo has liquidated the Designated Assets and (iii) NewCo has made all required payments to the Debtor on account of the New LP Interest.

82. "Trustee" means The Bank of New York, National Association, as successor to JPMorgan Chase Bank, National Association, as trustee under the Indenture, or any permitted successors in trust under the Indenture.