**PLAN EXHIBIT D**

**FORM OF NEWCO LIMITED PARTNERSHIP AGREEMENT**

# Z-CDO Liquidation Fund, L.P.

_____

## LIMITED PARTNERSHIP AGREEMENT

**Z-CDO Liquidation Fund GP, L.L.C.**
**General Partner**

**Dated on [_____] [__], 2011**

THE LIMITED PARTNERSHIP INTERESTS ("INTERESTS") IN Z-CDO LIQUIDATION FUND, L.P. ISSUED PURSUANT TO THIS LIMITED PARTNERSHIP AGREEMENT (THE "AGREEMENT") HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY U.S. STATE.  FURTHER, Z-CDO LIQUIDATION FUND, L.P. INTENDS NOT TO REGISTER AS AN "INVESTMENT COMPANY" UNDER THE U.S. INVESTMENT COMPANY ACT OF 1940, AS AMENDED, PURSUANT TO SECTION 3(c)(7) THEREOF.   INTERESTS MAY NOT BE TRANSFERRED WITHOUT REGISTRATION UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS UNLESS AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE.  IT IS NOT ANTICIPATED THAT INTERESTS WILL BE REGISTERED UNDER THE SECURITIES ACT OR APPLICABLE STATE SECURITIES LAWS.  IN ADDITION, TRANSFERS OF INTERESTS ARE SUBJECT TO THE RESTRICTIONS SET FORTH IN ARTICLE VII HEREOF.

**TABLE OF CONTENTS**

<u>Article</u>                                                                                                    <u>Page</u>

ARTICLE I DEFINITIONS ...................................................................................................1

ARTICLE II FORMATION AND PURPOSE .......................................................................6

ARTICLE III THE GENERAL PARTNER; OTHER FUNDS...............................................7

ARTICLE IV PARTNERSHIP INTERESTS .......................................................................12

ARTICLE V CAPITAL ACCOUNTS; ALLOCATIONS; VALUATION.............................14

ARTICLE VI REINVESTMENTS; DISTRIBUTIONS .......................................................17

ARTICLE VII TRANSFERS AND WITHDRAWALS OF PARTNERSHIP INTERESTS ....................................17

ARTICLE VIII OWNERSHIP OF PARTNERSHIP PROPERTY ........................................20

ARTICLE IX RECORDS AND ACCOUNTING; REPORTS; CONFIDENTIAL INFORMATION .....................21

ARTICLE X EXCULPATION AND INDEMNIFICATION .................................................23

ARTICLE XI AMENDMENT; CONSENTS FOR OTHER PURPOSES ..............................26

ARTICLE XII DISSOLUTION AND WINDING UP ...........................................................29

ARTICLE XIII MISCELLANEOUS .....................................................................................32

NEWYORK 8029113 v6 (2K)

# Z-CDO LIQUIDATION FUND, L.P.

## LIMITED PARTNERSHIP AGREEMENT

THIS LIMITED PARTNERSHIP AGREEMENT is entered into on [_____] [__], 2011, by and among Zais Investment Grade Limited VII, a Cayman Islands company as the initial limited partner (the "Initial Limited Partner"), the General Partner as general partner of Z-CDO Liquidation Fund, L.P. (the "Partnership") and those other Persons who may hereafter be admitted to the Partnership as Limited Partners in accordance with the provisions hereof.

### *PRELIMINARY STATEMENT*

WHEREAS, the parties desire to enter into this Agreement pursuant to and in accordance with the Exempted Limited Partnership Law (as amended) of the Cayman Islands (the "Partnership Law") to: (i) set forth their respective interests, rights, powers, authority, duties, responsibilities, liabilities and obligations in and with respect to the Partnership, as well as the respective interests, rights, powers, authority, duties, responsibilities, liabilities and obligations of Persons who may hereafter be admitted to the Partnership as Partners in accordance with the provisions hereof; and (ii) provide for the management and conduct of the business and affairs of the Partnership.

NOW, THEREFORE, in consideration of the mutual promises and agreements made herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I
## DEFINITIONS

Capitalized terms used in this Agreement have the meanings given them in this Article I, unless otherwise expressly provided herein or as otherwise required by the context.

**1.1.** "Accounting Period" means a period determined in accordance with the provisions of Section 9.2(b).

**1.2.** "Additional General Partner" has the meaning given it in Section 4.8(a).

**1.3.** Administrator" means any party that the General Partner may select as administrator to the Partnership.

**1.4.** "Adverse Consequence" has the meaning given it in Section 5.4(b).

**1.5.** "Advisers Act" means the U.S. Investment Advisers Act of 1940, as amended.

**1.6.** "Affiliate," of a specified Person, means any Person that directly, or indirectly through one or more intermediaries, Controls, is Controlled by, or is under common Control with, such specified Person.

**1.7.** "Agreement" means this limited partnership agreement as subsequently amended and/or restated from time to time in accordance with the provisions hereof and the Partnership Law.

**1.8.** "Assignee" has the meaning given it in Section 7.7(a).

**1.9.**    "Bankruptcy," of a Person, means: (1) such Person (a) makes an assignment for the benefit of creditors; (b) files a voluntary petition in bankruptcy; (c) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceeding; (d) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation; (e) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of such nature; or (f) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties; or (2) one hundred and twenty (120) days after the commencement of any proceeding against such Person seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation, the proceeding has not been dismissed, or if within ninety (90) days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within ninety (90) days after the expiration of any such stay, the appointment is not vacated. Without limiting the generality of the foregoing, if a Person is a partnership, Bankruptcy of such Person shall also include the Bankruptcy of any general partner of such Person.

**1.10.**    "Business Day" means any day on which the New York Stock Exchange and commercial banks in New York, New York are open for business.

**1.11.**    "Capital Account," of a Partner, has the meaning given it in Section 5.1.

**1.12.**    "Cash Equivalents" means short-term deposits, commercial paper, demand deposits, U.S. government securities, money market funds, repurchase agreements and similar investments.

**1.13.**    "Carrying Value" means, with respect to any Partnership asset, the asset's adjusted tax basis for United States federal income tax purposes, except that the Carrying Values of all Partnership assets shall be adjusted to equal their respective Fair Market Values, in accordance with the rules set forth in Treasury Regulations § 1.704-1(b)(2)(iv)(f), except as otherwise provided herein, immediately prior to: (a) the date of the acquisition of any additional interest in the Partnership by any new or existing Partner; (b) the date of the distribution of more than a *de minimis* amount of Partnership assets (other than a *pro rata* distribution) to a Partner; or (c) such other dates as may be specified in Treasury Regulations under § 704 of the Code; provided that adjustments pursuant to clause (a), (b) or (c) above shall be made only if the General Partner in good faith determines that such adjustments are necessary or appropriate to reflect the relative economic interests of the Partners.  The Carrying Value of any Partnership asset distributed to any Partner shall be adjusted immediately prior to such distribution to equal its Fair Market Value.  In the case of any asset that has a Carrying Value that differs from its adjusted tax basis, Carrying Value shall be adjusted by the amount of depreciation, amortization and other cost recovery deductions calculated for purposes of the definition of "Net Profits" and "Net Losses" rather than the amount of depreciation determined for United States federal income tax purposes.

**1.14.**    "Certificate" means the Certificate of Registration of Limited Partnership of the Partnership dated [_____] [__], 2011.

**1.15.**    "Code" means the United States Internal Revenue Code of 1986, as amended.

**1.16.**    "Control," whether such word is used as a noun, verb or adjective, has the meaning given it in Rule 405 under the Securities Act.

- 2 -

**1.17.**    "Consent of the Partnership" means, subject to Section 11.2(b), the consent of, as of any time, Limited Partners representing, as of such time, in excess of 50% of the aggregate Partnership Interests of such Limited Partners.

**1.18.**    "Consent Transaction" means any transaction, practice, amendment to this Agreement or other action requiring the Consent of the Partnership under this Agreement.

**1.19.**    "Designee" has the meaning given it in Section 7.3(a).

**1.20.**    "Distribution Proceeds" means the net cash proceeds from the sale or disposition of the Partnership Property and income generated from investments, less Reserves.

**1.21.**    "Entity" means any U.S. or non-U.S. corporation, partnership (whether general or limited), joint venture, limited liability company, business trust or association, trust, estate, unincorporated association or organization, government (or political subdivision, department or agency thereof), cooperative or other entity, whether acting in an individual or representative capacity.

**1.22.**    "ERISA" means the U.S. Employee Retirement Income Security Act of 1974, as amended.

**1.23.**    "Exchange Act" means the U.S. Securities Exchange Act of 1934, as amended.

**1.24.**    "Fair Market Value" means the value of any one or more of the Partnership's assets, determined in accordance with the Investment Manager procedures for its investment business.

**1.25.**    "Fiscal Year" means the fiscal year of the Partnership determined in accordance with the provisions of Section 9.2(a).

**1.26.**    "GAAP" shall mean United States generally accepted accounting principles.

**1.27.**    "General Partner" means Z-CDO Liquidation Fund GP, L.L.C. or, subject to the provisions of this Agreement, any one or more Additional General Partners, to the extent that Z-CDO Liquidation Fund GP, L.L.C., pursuant to the provisions of Section 4.8 of this Agreement, provides that any one or more of such Additional General Partners may possess and exercise any one or more of the rights, powers and authority of a general partner hereunder.

**1.28.**    "General Partner Party" means the General Partner, the Investment Manager, any Affiliate of the General Partner or Investment Manager, any member, partner, shareholder, manager, director, officer, employee or agent (including any placement agent) of the General Partner or Investment Manager or any such Affiliate.

**1.29.**    "Indemnitee" has the meaning given it in Section 10.2(a), and includes the Liquidator.

**1.30.**    "Initial Capital Contribution" means the initial contribution of interests, properties (whether tangible or intangible, and whether real, personal or mixed), and rights that the Initial Limited Partner will contribute to the Partnership in exchange of the Initial Partnership Interests.

**1.31.**    "Initial Limited Partner" has the meaning given it in the introductory statement of this Agreement.

NEWYORK 8029113 v6 (2K)

**1.32.** "Initial Partnership Interests" means the limited partnership interests of the Partnership that will be issued in favor of the Initial Limited Partner.

**1.33.** "Investment Company Act" means the U.S. Investment Company Act of 1940, as amended.

**1.34.** "Investment Management Agreement" means the management agreement among the Partnership, the General Partner and the Investment Manager dated [____] [__], 2011, as may be amended or amended and restated from time to time.

**1.35.** "Investment Manager" means, initially, Anchorage Capital Group, L.L.C., a Delaware, U.S.A. limited liability company, and any other party that may become the investment adviser to the Partnership pursuant to the terms hereof.

**1.36.** "Limited Partner," as of a particular time, means a Person who is registered in the Partnership ledger maintained by the General Partner as limited partner of the Partnership in accordance with the provisions of this Agreement and who has not been required to withdraw from the Partnership as a limited partner pursuant to the provisions of Sections 7.2 or 7.5.

**1.37.** "Limited Partner Interest" means a Partnership Interest held by a Person in its capacity as a Limited Partner.

**1.38.** "Liquidation Reserves" has the meaning given it in Section 12.2(b)(vii).

**1.39.** "Liquidator" has the meaning given it in Section 12.2(a).

**1.40.** "Losses," of a General Partner Party, means any and all losses, claims, damages, liabilities, expenses (including reasonable legal fees and expenses), judgments, fines, amounts paid in settlement and other amounts actually and reasonably paid or incurred by such General Partner Party in connection with any and all claims, demands, actions, suits or proceedings (including arbitration and mediation proceedings and actions by or in the right of the Partnership), civil, criminal, administrative or investigative, that relate, directly or indirectly, to acts or omissions (or alleged acts or omissions) of such General Partner Party in connection with the formation, business or operations of the Partnership and in which such General Partner Party may be involved, or is threatened to be involved, as a party, witness or otherwise, whether or not the same shall proceed to judgment or be settled or otherwise be brought to a conclusion.

**1.41.** "Majority in Interest of the Limited Partners" means, as of any time, Limited Partners representing, as of such time, in excess of 50% of the aggregate Partnership Interests of such Limited Partners.

**1.42.** "Net Assets" means the net assets of the Partnership.

**1.43.** "Net Profits" or "Net Losses" means, for each Fiscal Year or other period, the taxable income or loss of the Partnership, or particular items thereof, determined in accordance with the accounting method used by the Partnership for United States federal income tax purposes with the following adjustments: (i) all items of income, gain, loss or deduction specially allocated pursuant to Section 5.3 or otherwise pursuant to this Agreement, shall not be taken into account in computing such taxable income or loss; (ii) any income of the Partnership that is exempt from United States federal income taxation and not otherwise taken into account in computing Net Profits and Net Losses shall be added to such taxable income or loss; (iii) if the Carrying Value of any asset differs from its adjusted tax

- 4 -

basis for United States federal income tax purposes, any gain or loss resulting from a disposition of such asset shall be calculated with reference to such Carrying Value; (iv) upon an adjustment to the Carrying Value of any asset pursuant to the definition of Carrying Value (except in respect of depreciation, amortization or cost recovery deductions), the amount of the adjustment shall be included as gain or loss in computing such taxable income or loss; (v) if the Carrying Value of any asset differs from its adjusted tax basis for United States federal income tax purposes, the amount of depreciation, amortization or other cost recovery deductions with respect to such asset for purposes of determining Net Profits and Net Losses shall be an amount which bears the same ratio to such Carrying Value as the United States federal income tax depreciation, amortization or other cost recovery deduction bears to such adjusted tax basis (provided that if the United States federal income tax depreciation, amortization, or other cost recovery deduction is zero, the General Partner may use any reasonable method for purposes of determining depreciation, amortization, or other cost recovery deductions in calculating Net Profits and Net Losses); and (vi) except for items in (i) above, any expenditures of the Partnership not deductible in computing taxable income or loss, not properly capitalizable and not otherwise taken into account in computing Net Profits and Net Losses pursuant to this definition shall be treated as deductible items.

1.44.    "Notification," to a Person, means a written notice that is deemed to be duly given to such Person on the date of delivery if delivered in person to such Person or sent to such Person by facsimile transmission, e-mail transmission or reputable overnight courier, on the date that transmission or receipt thereof is confirmed, or on the earlier of actual receipt or three (3) Business Days after the date of mailing if mailed to such Person by registered or certified mail (first class postage prepaid, return receipt requested); provided that a Notification to the Partnership shall be deemed to be duly given to the Partnership only upon its actual receipt by the Partnership.  Any Notification required or permitted to be given to the Partnership shall be sent to the principal office of the Partnership, or to such other address, facsimile number or e-mail address as the General Partner may specify in a Notification given to all other Partners.  Any Notification required or permitted to be given to a Partner shall be sent to such Partner at such address or to such facsimile number or e-mail address as such Partner may notify the Partnership by way of a Notification.

1.45.    "Partner" means the General Partner and each Limited Partner, including the Initial Limited Partner.

1.46.    "Partnership" means Z-CDO Liquidation Fund, L.P., a Cayman Islands exempted limited partnership formed in accordance with the Partnership Law.

1.47.    "Partnership Interest," of a Partner at any particular time, means such Partner's interest, rights, powers and authority in and with respect to the Partnership at such time as determined in accordance with the provisions of this Agreement, including the Initial Partnership Interest.  Such rights include (1) such Partner's share of the profits and losses of the Partnership, and such Partner's right to receive distributions from the Partnership pursuant to the provisions of this Agreement and (2) such Partner's other rights, powers and authority in respect of the Partnership under this Agreement.

1.48.    "Partnership Law" has the meaning given it in the Preliminary Statement.

1.49.    "Partnership Property," at any particular time, means all interests, properties (whether tangible or intangible, and whether real, personal or mixed), and rights of any type contributed to or acquired by the Partnership and owned or held by or for the account of the Partnership, whether owned or held by or for the account of the Partnership as of the date of the formation thereof or thereafter contributed to or acquired by the Partnership.

**1.50.** "Person" means any natural person, whether acting in an individual or representative capacity, or any Entity.

**1.51.** "Reserves" has the meaning given it in Section 9.3(b).

**1.52.** "Securities Act" means the U.S. Securities Act of 1933, as amended.

**1.53.** "Successor" means (i) with respect to any natural person, the executor, administrator, guardian, conservator or other legal representative of such person and (ii) with respect to any Entity, the legal representative or successor thereof.

**1.54.** "Tax Matters Partner" has the meaning given it in Section 9.5(d).

**1.55.** "Termination Date" has the meaning given it in Section 2.4.

**1.56.** "Transfer," whether such word is used as a noun, verb or adjective, means any transaction in which a Person assigns or purports to assign a Partnership Interest, or an interest therein, to another Person, and includes any transfer, sale, assignment, gift, exchange, pledge, mortgage or hypothecation, or any other conveyance, disposition or encumbrance, or any swap or other derivative transaction based on the value or change in value of a Partnership Interest, whether voluntary, involuntary or by operation of law, of such Partnership Interest or interest therein.

**1.57.** "Treasury Regulations" means the income tax regulations promulgated under the Code.

**1.58.** "U.S. Securities Laws" means any one or more of the Advisers Act, the Securities Act, the Exchange Act and the Investment Company Act.

**ARTICLE II**
**FORMATION AND PURPOSE**

**2.1.**    **Formation**.  The Partnership is going to be registered as an exempted limited partnership under Section 9 of the Partnership Law.  The rights and obligations of the Partners shall be as stated in the Partnership Law, except as this Agreement otherwise provides.  The General Partner, on behalf of the Partnership, shall effect all filing, recording, publishing and other acts necessary or appropriate for compliance with all the requirements for the formation and operation of the Partnership as an exempted limited partnership under this Agreement and the Partnership Law and under the laws of the Cayman Islands and such other jurisdictions in which the General Partner determines that the Partnership may conduct business (including without limitation making the filings required under Sections 9, 10 and 15 of the Partnership Law).

**2.2.**    **Name**.  The name of the Partnership shall be "Z-CDO Liquidation Fund, L.P."  The General Partner shall manage and conduct the business and affairs of the Partnership under that name or, to the extent permitted by applicable law, under such other name or names as the General Partner may determine from time to time.

**2.3.**    **Purpose**.  The business and purpose of the Partnership is to (i) acquire the Initial Capital Contribution and issue the Initial Partnership Interest in favor of the Initial Limited Partner in exchange thereof; (ii) liquidate the Partnership Property as directed by the Investment Manager; (iii) make investments of the available cash from income on, and disposition proceeds of, Partnership Property in Cash Equivalents; and (iv) make distributions of the Distribution Proceeds pursuant to Section 6.2 hereof; provided that the Partnership may not carry on any business, purpose or activity that may not lawfully be

- 6 -

carried on by a limited partnership formed under the Partnership Law. The Partnership shall possess and may exercise all the powers and privileges granted by the Partnership Law or by any other law or by this Agreement, together with any powers incidental thereto, so far as such powers and privileges are necessary, appropriate, advisable or convenient to the conduct, promotion or attainment of any business, purpose or activity of the Partnership.

**2.4.** __Status and Duration; Term__. The Partnership's existence commenced on [_____] [__], 2011, in accordance with the Partnership Law, and shall continue until complete liquidation of the Partnership Property and distribution of the Distribution Proceeds pursuant to Section 6.2 hereof. Following the expiration of the term, the Partnership shall be wound up and subsequently dissolved in accordance with the provisions of Article XII (the "Termination Date").

**2.5.** __Registered Office__. The registered office of the Partnership in the Cayman Islands is [c/o Walkers Corporate Services Limited, Walker House, 87 Mary Street, George Town,  Grand Cayman KY1-9005, Cayman Islands], or such other office (which may but need not be a place of business of the Partnership) as the General Partner may designate from time to time; provided, that the General Partner shall give Notification to the Limited Partners of any change in the location of the registered office of the Partnership within thirty (30) days after the date of such change. The Partnership may have such other office or offices as the General Partner may designate from time to time.

**2.6.** __Partners Not Agents__. Except as specifically provided herein, nothing contained herein shall be construed to constitute any Partner as the agent of any other Partner or any Partner, other than the General Partner, as the agent of the Partnership.

**2.7.** __Register__. The General Partner, or a delegate on its behalf, shall maintain all registers or records in the manner required in respect of the Partnership under applicable law, including without limitation those under Sections 7(7)(b) and 11 of the Partnership Law.

**2.8.** __Capital Contribution__. Concurrently with the execution of this Agreement the General Partner shall make a capital contribution to the Partnership of $100 which shall be returned to the General Partner upon liquidation of the Partnership pursuant to Section 12.4.(a)(ii).

### ARTICLE III
### THE GENERAL PARTNER; OTHER FUNDS

**3.1.** __Rights, Powers and Authority of the General Partner__.

(a)    Subject to the provisions of this Agreement and the requirements of applicable law, the General Partner shall possess and may exercise full, complete and exclusive right, power and authority to manage and conduct the business and affairs of the Partnership. The General Partner may delegate to any other person or entity, including the Investment Manager and the Administrator, any rights, powers, authority, duties and obligations as vested by this Agreement in the General Partner, except as prohibited by law.

(b)    Without limiting the generality of the foregoing, but subject in each case to the provisions of this Agreement and the requirements of applicable law, the General Partner shall possess and may exercise the right, power and authority:

(i)    to take such action for and on behalf of the Partnership and in the name of the Partnership as the General Partner shall reasonably determine to be necessary, appropriate, advisable or convenient to effect the continuation of the Partnership until the Termination Date and to

- 7 -

carry on the businesses, purposes and activities for which the Partnership was formed, including the activities set forth in Section 2.3, and further including the execution, swearing to, acknowledgement, delivery, publication and filing and recording in the appropriate public offices of:

> (A)    all certificates, instruments and other documents (including this Agreement and the Certificate and all amendments and/or restatements thereof) that the General Partner shall reasonably determine to be necessary, appropriate, advisable or convenient to effect such formation and to carry on such businesses, purposes and activities (including such certificates, instruments or other documents, and such amendments thereto, as the General Partner shall reasonably determine to be necessary, appropriate, advisable or convenient to comply with the requirements for the operation of the Partnership as a Cayman Islands exempted limited partnership under the Partnership Law and the qualification of the Partnership to do business in any jurisdiction in which the Partnership owns property or conducts business);

> (B)    all certificates, instruments or other documents that the General Partner shall reasonably determine to be necessary, appropriate, advisable or convenient to reflect any amendment of this Agreement, or the Certificate effected in accordance with the provisions hereof;

> (C)    all conveyances and other certificates, instruments and other documents that the General Partner shall reasonably determine to be necessary, appropriate, advisable or convenient to reflect the winding up and dissolution of the Partnership pursuant to the provisions of this Agreement and the Partnership Law; and

> (D)    all certificates, instruments and other documents (including any agreement contemplated by Section 11.3) relating to the admission, withdrawal, removal or substitution of any Partner pursuant to the provisions of this Agreement.

(ii)    to cause the Partnership to enter into agreements with (A) prime brokers, other broker-dealers, futures commission merchants, any counterparty, custodians, legal counsel, accountants, auditors, appraisers, investment bankers and other consultants selected by the General Partner, (B) one or more Persons to serve as investment manager(s) for or investment adviser(s) to the Partnership on a discretionary or non-discretionary basis, including the Investment Manager, in each case on such terms and subject to such conditions as the General Partner may determine, including with respect to any indemnification obligations in favor of any such Person (it being understood and agreed that nothing herein shall require the General Partner to employ or continue to employ the services of any Person, or be construed to limit in any way the rights, powers and authority of the General Partner hereunder);

(iii)    to cause the Partnership to loan monies to any Partner (including any Partner who is a General Partner Party), in such principal amount, and on such other terms and subject to such conditions, as the General Partner may determine (it being understood and agreed that in the event that any loan is not repaid on or before the maturity date of such loan, the General Partner may, but shall not be required to, cause the outstanding balance of such loan to be charged against such Partner's Capital Account as of the end of the Accounting Period in which such loan matures and to treat the amount so charged as a distribution to such Partner);

NEWYORK 8029113 v6 (2K)

(iv)    to the extent necessary or desirable to achieve an orderly liquidation of the Partnership Property, to cause the Partnership to borrow monies from time to time (and to pledge, mortgage, hypothecate or encumber its assets, and issue notes or other evidences of indebtedness, in connection therewith), on such terms and subject to such conditions as the General Partner may determine;

(v)    to cause the Partnership to engage in any transaction that is subject to the provisions of Section 206(3) of the Advisers Act; provided that, the General Partner may not cause the Partnership to engage in any such transaction without giving Notification to the Limited Partners, at least thirty (30) days prior to the completion of such transaction, setting forth all material facts relating to such transaction and obtaining the Consent of the Partnership to such transaction prior to the completion thereof;

(vi)    to act, in respect of any of its rights, powers, authority, duties, responsibilities or obligations hereunder, directly or by or through any duly authorized officer, employee or agent of the General Partner or any duly appointed attorney-in-fact of the General Partner (it being understood and agreed that each such officer, employee, agent or attorney-in-fact shall, to the extent provided by the General Partner, possess full and complete right, power and authority to do and perform each and every act which is permitted or required to be performed by a General Partner hereunder on behalf of the General Partner, without thereby causing the General Partner to cease to be a general partner of the Partnership); and

(vii)    to grant such indemnifications, execute such agreements and incur such obligations in order to allow the Initial Limited Partner to most effectively execute its plan for Bankruptcy reorganization.

(c)    Notwithstanding any other provision of this Agreement, the General Partner shall not have the right, power or authority, without the written consent of or ratification by all the Limited Partners, to: (i) do any act that would make it impossible to carry on the ordinary business of the Partnership (it being understood and agreed, for the avoidance of doubt, that this clause (i) shall not affect the General Partner's right, power or authority to wind up and dissolve the Partnership in accordance with the provisions of Article XIII); (ii) confess a judgment against the Partnership; or (iii) possess Partnership Property for other than a proper Partnership purpose.

(d)    To the extent the duties, responsibilities or obligations of the General Partner require expenditures of funds to be paid to third parties, the General Partner shall not have any duty, responsibility, liability or obligation hereunder except to the extent that funds of the Partnership are reasonably available to it for the performance of such duties, responsibilities or obligations, and nothing herein contained shall be deemed to require the General Partner, in its capacity as such, to expend its individual funds for payment to third parties or to undertake any specific liability or litigation on behalf of the Partnership.

(e)    The General Partner shall not have any personal liability for the repayment to the Initial Limited Partner of the Initial Capital Contribution.

**3.2.    Reliance by Third Parties**.  Notwithstanding anything to the contrary in this Agreement, any Person dealing with the Partnership shall be entitled to assume that the General Partner has full right, power and authority to pledge, mortgage, hypothecate, encumber, sell or otherwise use in any manner any and all assets of the Partnership and to enter into any contracts for and on behalf of the Partnership, including, but not limited to, executing broker agreements, prime broker agreements, account agreements, "repurchase agreements," "reverse repurchase agreements," securities lending and hypothecation

- 9 -

agreements, margin lending, custody account and sweep agreements, options agreements, futures agreements, foreign exchange agreements, contracts for differences master agreements, "principal to principal" transactions, "agency cross" transactions, brokered trades, any agreement documented pursuant to any International Swaps and Derivatives Association, Inc., the Bond Market Association (or any successor organization), or British Bankers' Association "Master Agreement," and all other manner of related or similar agreements or transactions, and such Person shall be entitled to deal with the General Partner as if it were the Partnership's sole party in interest, both legally and beneficially.  In no event shall any Person dealing with the General Partner or its representatives be obligated to ascertain that the provisions of this Agreement have been complied with or to inquire into the necessity or expedience of any act or action of the General Partner or its representatives.  Each and every certificate, instrument or other document executed on behalf of the Partnership by the General Partner shall be conclusive evidence in favor of any and every Person relying thereon or claiming thereunder that (a) at the time of the execution and delivery of such certificate, instrument or document, this Agreement was in full force and effect, (b) the Person executing and delivering such certificate, instrument or document was duly authorized and empowered to do so for and on behalf of the Partnership and (c) such certificate, instrument or other document was duly executed and delivered in accordance with the provisions of this Agreement and is binding upon the Partnership.

**3.3.**   **Compensation and Reimbursement of Expenses**.

(a)   No compensation is payable to the Investment Manager or the General Partner by the Partnership.

(b)   The Partnership shall pay such costs and expenses as the General Partner or the Investment Manager shall reasonably determine to be necessary, appropriate, advisable or convenient to carry on the businesses, purposes and activities for which the Partnership was formed (and shall reimburse the General Partner Parties for any such costs and expenses incurred by them on behalf of the Partnership), such as:

(i)   the organizational expenses of the Partnership;

(ii)   any governmental, regulatory, licensing, filing or registration fees incurred by the Partnership, the General Partner or the Investment Manager in compliance with the rules of any self-regulatory organization or any U.S. federal, state or local laws; the cost of the audit of the Partnership's financial statements and the preparation of its tax returns; the fees and expenses for financial and tax accounting and reporting services, and administrative services on behalf of the Partnership to the extent performed by persons other than the General Partner or the Investment Manager; any administrator's fees; specific expenses incurred in obtaining systems, research and other information utilized for portfolio management purposes that facilitate valuations and accounting, including the costs of statistics and pricing services, service contracts for quotation equipment and related hardware and software; the costs of any liability insurance obtained on behalf of the Partnership or a General Partner Party; and all costs and expenses associated with reporting and providing information to existing and prospective Limited Partners; and

(iii)   all costs and expenses directly related to liquidation of Partnership Property such as transaction costs, portfolio construction tools and data services (which may include Numerix and Intex Solutions); custody fees; any withholding or transfer tax is imposed on the Partnership or any of its Partners; to the extent permitted by applicable law, and subject to the indemnification/exculpation provisions of this Agreement or the Investment Management Agreement, any legal fees and costs (including settlement costs) arising in connection with any litigation or regulatory investigation instituted against the Partnership, the General Partner or the Investment Manager, each in its

capacity as such; the expenses of the Partnership's counsel in connection with advice directly relating to the Partnership's legal affairs; the costs of any outside appraisers, accountants, attorneys or other experts engaged by the General Partner or the Investment Manager as well as other expenses directly related to be Partnership's liquidation of Partnership Property; the costs and expenses of holding any meetings of Limited Partners; and other expenses associated with the operation of the Partnership, including any extraordinary expenses (such as litigation and indemnification).

(c)    Except as provided above, each of the General Partner and the Investment Manager shall pay all of its own operating and overhead costs without reimbursement from the Partnership.

**3.4.    <u>Activities of the General Partner and Affiliates; Interested Partners</u>**.

(a)    Although nothing herein shall require any General Partner Party to devote its full time or any material portion of its time to the Partnership, the General Partner shall use its reasonable best efforts to further the businesses, purposes and activities of the Partnership and to devote to such businesses, purposes and activities such of its time and activity (and the time and activity of its employees) during normal business days and hours as they shall reasonably determine to be necessary for the Partnership to achieve its business objectives; provided that nothing contained in this Section 3.4(a) shall preclude any General Partner Party from acting, consistent with the foregoing, either individually or as a member, partner, shareholder, director, trustee, officer, official, employee or agent of any Entity, in connection with any type of enterprise (whether for or not for profit), regardless of whether the Partnership or any General Partner Party has dealings with or invests in such enterprise (but subject to Section 3.6).  No Limited Partner shall, by reason of any provision of this Agreement or the General Partner's carrying out the businesses, purposes and activities of the Partnership, be entitled to any interest, economic or otherwise, in any such enterprise.

(b)    Subject to the requirements of applicable law, the General Partner Parties invest directly in various futures, securities and derivatives for client accounts as well as their own accounts. Subject to their fiduciary duties to the Partnership, the General Partner Parties, in trading on behalf of client accounts or their own accounts, may make use of information obtained by the General Partner Parties in the course of managing the Partnership.  The General Partner Parties have no obligation to the Partnership for any profits earned from their use of such information nor to compensate the Partnership in any respect for their receipt of such information.

(c)    The General Partner Parties may give advice to and take action in connection with providing services to other clients or their own accounts that differs from advice given, or in the timing and nature of action taken, with respect to the Partnership, even though the Partnership and such other clients may be similarly situated.

(d)    The General Partner or the Investment Manager, on behalf of the General Partner, may cause the Partnership to sell Partnership Property to other clients or vehicles managed by one or more General Partner Parties when the General Partner or the Investment Manager believes such transactions are appropriate and in the best interests of the Partnership.  Any incremental costs and expenses associated with any such transactions shall be borne by all such funds (including the Partnership) on a *pro rata* basis.

(e)    In selecting broker-dealers to effect transactions with or for the Partnership, if any, the General Partner or the Investment Manager, subject to their overall duty to obtain "best execution" of Partnership transactions in securities, shall have authority to and may consider the full range and quality of the services and products provided by various broker-dealers, including factors such

- 11 -

as the ability to effect prompt and reliable executions at favorable prices (including the applicable dealer spread or commission, if any), the operational efficiency with which transactions are effected, taking into account the size of order and difficulty of execution, the financial strength, integrity and stability of the broker, the broker firm's risk in positioning a block of securities, the quality, comprehensiveness and frequency of available research services considered to be of value and the competitiveness of commission rates in comparison with other brokers satisfying the General Partner's or the Investment Manager's other selection criteria.  As long as the services or other products provided by a particular broker-dealer (whether directly or through a third party) qualify as "brokerage and research services" within the meaning of Section 28(e) of the Exchange Act and the General Partner or the Investment Manager determines in good faith that the amount of commission charged by such broker-dealer is reasonable in relation to the value of such "brokerage and research services," the General Partner or the Investment Manager may utilize the services of that broker-dealer to execute transactions for the Partnership on an agency basis even if (i) the Partnership would incur higher transaction costs than it would have incurred had another broker-dealer been used and (ii) the Partnership does not necessarily benefit from the research services or products provided by that broker-dealer.

(f)       Each Limited Partner shall be deemed to have given full and informed consent to actions and practices involving actual or potential conflicts between the interests of any one or more General Partner Parties, on the one hand, and the Partnership and/or one or more Limited Partners, on the other hand, in connection with the management and conduct of the business and affairs of the Partnership, as contemplated herein.

(g)       The General Partner shall discuss the foregoing activities with any Limited Partner upon request.  These activities provided to a Person prior to the time such Person becomes a Limited Partner of the Partnership, are explicitly acknowledged and consented to by each Person as a necessary condition to such Person's participation in the Partnership as a Limited Partner.

## ARTICLE IV
## PARTNERSHIP INTERESTS

### 4.1.    <u>General</u>.

(a)       Partnership Interests and Partners shall have the relative rights, powers, authority, privileges, preferences, duties, responsibilities, liabilities and obligations applicable to such Partnership Interests and such Partners as are set forth in this Agreement.

(b)       Partnership Interests shall be deemed to be personal property giving only the rights, powers, authority, privileges and preferences provided herein, notwithstanding the nature of the property held by the Partnership.  No Partner shall have any right, title or interest in or to any specific Partnership Property, nor shall any Partner have any right to call for a partition or division, or possession, of the same or for an accounting.

### 4.2.    <u>Issuance and Records of Limited Partner Interests</u>.

(a)       The General Partner shall cause the books and records of the Partnership to reflect each Person who is admitted as a Limited Partner of the Partnership, including the Initial Limited Partner.

(b)       A Person may be admitted to the Partnership as a Limited Partner only if such admission is effected in accordance with the provisions of Section 7.7(b)

(c)    The General Partner may compromise or waive any obligation a Limited Partner may have to the Partnership hereunder, on such terms and subject to such conditions as the General Partner may determine.

**4.3.    No Personal Liability**.  Except as otherwise expressly provided in this Agreement or otherwise required by the Partnership Law, no Limited Partner shall be liable for the debts, obligations or liabilities of the Partnership, whether arising in tort, contract or otherwise, unless (a) such Limited Partner expressly agrees otherwise or (b) such Limited Partner, in addition to exercising its rights, powers and authority as a Limited Partner, is admitted to the Partnership as a general partner.

**4.4.    No Participation in Management**.

(a)    No Limited Partner shall, in its capacity as such, take part in the management or conduct of the business or affairs of the Partnership, transact any business in the name of the Partnership, or otherwise for or on behalf of the Partnership, or have the right, power or authority to sign documents for or otherwise bind the Partnership or to incur any indebtedness or expenditures on behalf of the Partnership.

(b)    No Limited Partner, in its capacity as such, shall have the right, power or authority to approve, agree to, vote on or consent to any matter affecting the Partnership except to the extent any such right, power or authority is expressly granted to such Limited Partner by this Agreement.

**4.5.    No Appraisal Rights**.  Except as may otherwise be determined by the General Partner, Limited Partners shall have no appraisal rights in connection with any action taken by the Partnership, including any transaction contemplated by Article XII of this Agreement.

**4.6.    Ownership of Interests**.  The ownership of Limited Partner Interests shall be recorded on the books and records of the Partnership, and no certificates certifying the ownership of Limited Partner Interests shall be issued except to the extent and in such manner the General Partner may determine from time to time.  The register of Limited Partners of the Partnership as maintained by the General Partner (or by a Person appointed by the General Partner) shall be conclusive as to the identity of the holders of Limited Partner Interests.

**4.7.    Power of Attorney**.

(a)    Each Limited Partner constitutes and appoints the General Partner, the Liquidator and authorized officers and attorneys-in-fact of each, and each of those acting singly, in each case with full power of substitution, as its true and lawful agent and attorney-in-fact, with full power and authority in its name, place and stead to execute, swear to, acknowledge, deliver, publish and file and record in the appropriate public offices:  (i) all certificates, instruments and other documents (including this Agreement and all amendments and/or restatements thereof) that the General Partner or the Liquidator shall reasonably determine to be necessary, appropriate, advisable or convenient to effect the formation of the Partnership and to carry on the businesses, purposes and activities for which the Partnership was formed (including such certificates, instruments or other documents, and such amendments thereto, as the General Partner or the Liquidator shall reasonably determine to be necessary, appropriate, advisable or convenient to comply with the requirements for the operation of the Partnership as a limited partnership and the qualification of the Partnership to do business in any jurisdiction in which the Partnership owns property or conducts business); (ii) all certificates, instruments or other documents that the General Partner or the Liquidator shall reasonably determine to be necessary, appropriate, advisable or convenient to reflect any amendment of this Agreement effected in accordance with the provisions hereof; (iii) all conveyances and other certificates, instruments and other documents that the General Partner or the Liquidator shall

- 13 -

reasonably determine to be necessary, appropriate, advisable or convenient to reflect the winding up and dissolution of the Partnership pursuant to the provisions of this Agreement; and (iv) all certificates, instruments and other documents relating to the admission, withdrawal, removal or substitution of any Partner pursuant to the provisions of this Agreement.

(b)    The foregoing appointment is irrevocable and has been granted to secure the obligation of each Limited Partner and shall be deemed to be a power coupled with an interest, in recognition of the fact that the Limited Partners shall be relying upon the power of the General Partner or the Liquidator, as the case may be, to act as contemplated by this Agreement in any filing or other action by it on behalf of the Partnership, and it shall survive the Transfer of a Limited Partner Interest, or any interest therein, and shall extend to the Successors of the transferring Limited Partner.

(c)    Nothing contained in this Section 4.7 shall be construed as authorizing the General Partner or the Liquidator to amend this Agreement except in accordance with the provisions of Article XII.

**4.8.**    **Admission of Additional General Partners**.

(a)    Subject to the provisions of Section 4.8(b), the General Partner may cause the Partnership to admit one or more Persons (including one or more Affiliates of the General Partner) to the Partnership as a general partner or general partners (each such Person, an "Additional General Partner") effective as of the beginning of any month, and, in connection therewith, may amend this Agreement to provide that any one or more of such Additional General Partners may possess and exercise any one or more of the rights, powers and authority of a general partner hereunder.

(b)    The General Partner may effect an admission of an Additional General Partner that is an Affiliate of the General Partner without obtaining the authorization or approval of the Limited Partners, but shall give Notification of such admission to the Limited Partners within a reasonable time after such admission. Except as required by applicable law, changes in the members or officers of the General Partner shall not require the consent of the Limited Partners and shall not dissolve the Partnership. The General Partner may not effect an admission of an Additional General Partner that is not an Affiliate of the General Partner without the consent of a Majority in Interest of the Limited Partners.

## ARTICLE V
## CAPITAL ACCOUNTS; ALLOCATIONS; VALUATION

**5.1.**    **Capital Accounts**. The General Partner shall cause the Partnership to establish and maintain for each Partner a separate capital account ("Capital Account"). The Capital Account of each Partner shall be credited with all Net Profits allocated to such Partner pursuant to Section 5.2 and any items of income or gain which are specially allocated pursuant to Section 5.3 or otherwise pursuant to this Agreement. The Capital Account shall be debited with all Net Losses allocated to such Partner pursuant to Section 5.2, any items of loss or deduction of the Partnership specially allocated to such Partner pursuant to Section 5.3 or otherwise pursuant to this Agreement, and all cash and the Carrying Value of any property (net of liabilities assumed by such Partner and the liabilities to which such property is subject) distributed by the Partnership to such Partner. To the extent not provided for in the preceding sentence, the Capital Accounts of the Partners shall be adjusted and maintained in accordance with the rules of Treasury Regulations § 1.704-1(b)(2)(iv), as the same may be amended or revised; provided that such adjustment and maintenance does not have a material adverse effect on the economic interests of the Partners. Subject to the foregoing sentence, in maintaining Capital Accounts, the General Partner may make such adjustments as it deems reasonably necessary to give effect to the provisions of this Agreement taking into account such facts and circumstances as the General Partner deems reasonably

- 14 -

necessary or appropriate for this purpose.  Any references in this Agreement to the Capital Account of a Partner shall be deemed to refer to such Capital Account as the same may be credited or debited from time to time as set forth above.  In the event of any Transfer of any interest in the Partnership in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the Transferred interest.  Notwithstanding anything in this Agreement to the contrary, no Partner shall be required to pay to the Partnership or to any other Partner the amount of any deficit that may exist from time to time in such Partner's Capital Account solely by reason of the existence of any such deficit (it being understood that, for the avoidance of doubt, this sentence is not intended to limit the application of any other provision of this Agreement that may require a Partner to make payments under such provision).

5.2.    **Allocations of Net Profits and Net Losses**.    Except as otherwise provided in this Agreement, Net Profits, Net Losses and, to the extent necessary, individual items of income, gain, loss or deduction, of the Partnership shall be allocated among the Partners in a manner such that, after giving effect to the special allocations set forth in Section 5.3, the Capital Account of each Partner, immediately after making such allocation, is, as nearly as possible, equal (proportionately) to the distributions that would be made to such Partner pursuant to Section 6.2 if the Partnership were dissolved, its affairs wound up and its assets sold for cash equal to their Carrying Value, all Partnership liabilities were satisfied, and the Net Assets of the Partnership were distributed in accordance with Section 6.2 to the Partners immediately after making such allocation.  For the avoidance of doubt and solely for the purpose of applying the preceding sentence, the General Partner shall be permitted, in its discretion, to cause the Carrying Value of a Partnership asset to be adjusted, as described in the definition of "Carrying Value", on a *mutatis mutandis* basis at the time at which such preceding sentence is applied.  Notwithstanding the foregoing, the General Partner may make such allocations as it deems reasonably necessary to give economic effect to the provisions of this Agreement taking into account such facts and circumstances as the General Partner deems reasonably necessary or appropriate for this purpose.

5.3.    **Special Allocation Provisions**.  Notwithstanding any other provision in this Article V:

(a)    **Qualified Income Offset**.  If any Partner unexpectedly receives any adjustments, allocations or distributions described in Treasury Regulations § 1.704-1(b)(2)(ii)(d)(4), (5) or (6), items of Partnership income and gain shall be specially allocated to such Partner in an amount and manner sufficient to eliminate any deficit balance in its Capital Account created by such adjustments, allocations or distributions as promptly as possible.

(b)    **Gross Income Allocation**.  If any Partner has a deficit Capital Account at the end of any Fiscal Year which is in excess of the sum of (i) the amount such Partner is obligated to restore, if any, pursuant to any provision of this Agreement, and (ii) the amount such Partner is deemed to be obligated to restore pursuant to the penultimate sentences of Treasury Regulations §§ 1.704-2(g)(1) and 1.704-2(i)(5), each such Partner shall be specially allocated items of Partnership income and gain in the amount of such excess as quickly as possible; provided that an allocation pursuant to this Section 5.3(b) shall be made only if and to the extent that a Partner would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Article VI have been tentatively made as if Section 5.3(a) and this Section 5.3(b) were not in this Agreement.

(c)    **General Partner Expenses**.  If any expenses of the General Partner and any items of loss, expense or deduction resulting therefrom are deemed to constitute items of Partnership loss or deduction rather than items of loss or deduction of the General Partner, such expenses of the General Partner and other items of loss, expense or deduction shall be allocated 100% to the General Partner and the General Partner's Capital Account shall be credited with a deemed capital contribution in the same amount.

- 15 -

(d)      Payee Allocation.  If any payment to any Person that is treated by the Partnership as the payment of an expense is recharacterized by a taxing authority as a Partnership distribution to the payee as a Partner, such payee shall be specially allocated an amount of Partnership gross income and gain as quickly as possible equal to the amount of the distribution.

(e)      Organizational Expenses.  Organizational expenses for which the Partnership reimburses the General Partner Parties under Section 3.3 shall be allocated to the Partners in accordance with their respective Limited Partner Interest.

(f)      Special Expense Allocations.  Any expenses specially allocated under this Agreement shall be allocated to the Partners in accordance with the relevant Section of this Agreement or, if none, their respective Limited Partner Interest.

(g)      Effect of Special Allocations on Subsequent Allocations.  Any special allocations of income or gain pursuant to Section 5.3(a) or 5.3(b) shall be taken into account in computing subsequent allocations pursuant to Section 5.2 and this Section 5.3(g), so that the net amount of any items so allocated and all other items allocated to each Partner shall, to the extent possible, be equal to the net amount that would have been allocated to each Partner if such allocations pursuant to Section 5.3(a) or 5.3(b) had not occurred.

(h)      Withholding Taxes.  Any taxes, fees or other charges the Partnership is required to withhold under applicable law with respect to any Partner (or that are withheld from payments to the Partnership with respect to any Partner's Partnership Interest) shall be withheld by the Partnership (and paid to the appropriate governmental authorities) and shall be deducted from the Capital Account of such Partner as of the last day of the Fiscal Year or fiscal period with respect to which such amount is required to be withheld and will be deemed to be a payment to such Partner.

**5.4.    Tax Allocations**.

(a)      For income tax purposes only, each item of income, gain, loss, deduction and credit of the Partnership shall be allocated among the Partners in the same manner as the corresponding items of Net Profits and Net Losses and specially allocated items are allocated for Capital Account purposes; provided that in the case of any Partnership asset the Carrying Value of which differs from its adjusted tax basis for United States federal income tax purposes, income, gain, loss, deduction and credit with respect to such asset shall be allocated solely for income tax purposes in accordance with the principles of Sections 704(b) and (c) of the Code (in any manner determined by the General Partner) so as to take account of the difference between Carrying Value and adjusted tax basis of such asset.

(b)      Notwithstanding anything in this Section 5.4 to the contrary, the General Partner may make such allocations as it deems reasonably necessary or appropriate to give economic effect to the provisions of this Agreement taking into account such facts and circumstances as the General Partner deems reasonably necessary or appropriate for this purpose.

**5.5.    Other Allocation Provisions**.  The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulations § 1.704-1(b) and shall be interpreted and applied in a manner consistent with such regulations.  Sections 5.2, 5.3 and 5.4 may be amended at any time by the General Partner, without the consent of the Limited Partners, if reasonably necessary, in the opinion of tax counsel to the General Partner, to comply with such regulations, so long as any such amendment does not materially change the relative economic interests of the Partners.

- 16 -

**5.6.** <u>**No Interest on Capital Accounts**</u>.  Partners shall not be entitled to interest on their Capital Accounts.

**5.7.** <u>**Valuation of the Partnership's Assets.**</u>  The General Partner does not intend or expect to value the Partnership's assets pursuant to Fair Market Value procedures but it reserves the right to do it at its own discretion.

**ARTICLE VI**
**REINVESTMENTS; DISTRIBUTIONS**

**6.1.** <u>**Reinvestments**</u>.  The General Partner is authorized to use all Distribution Proceeds received until they are distributed pursuant to the following Section 6.2 to make investments in Cash Equivalents as well as to pay expenses.

**6.2.** <u>**Distributions**</u>.

(a)    Distributions shall be made to the Partners at least on a quarterly basis at the end of each quarter and at such other times and in such manner as the General Partner may determine, to the extent that Distribution Proceeds are available.

(b)    Distribution Proceeds shall be apportioned to the Partners *pro rata* based on their respective Limited Partner Interest.

(c)    All distributions may be made in cash, in kind or partly in cash or in kind as determined by the General Partner.

(d)    All distributions shall be subject to any Reserves established by the General Partner.

**ARTICLE VII**
**TRANSFERS AND WITHDRAWALS OF PARTNERSHIP INTERESTS**

**7.1.** <u>**No Withdrawal of Limited Partners**</u>.  As the only Partner making a capital contribution to the Partnership, the Initial Limited Partner shall not have the right to withdraw, or receive any return of, or the fair value of, any portion of the Initial Capital Contribution.

**7.2.** <u>**Involuntary Withdrawal of Limited Partners**</u>.

(a)    The General Partner may at any time require any Limited Partner to: (i) withdraw all or any portion of its Capital Account by giving not less than five days' Notification to such Limited Partner; or (ii) withdraw as a Limited Partner by giving not less than five days' Notification to such Limited Partner; provided that no such Notification shall be required with respect to any such Limited Partner if the General Partner has reason to believe that such Limited Partner acquired a Limited Partner Interest as a result of a misrepresentation or that such Limited Partner's ownership of a Limited Partner Interest would cause the Partnership or the General Partner to be in violation of any law or regulation applicable to the Partnership or the General Partner or would result in any of the assets of the Partnership being considered to be assets of any "employee benefit plan" as defined in and subject to ERISA or any "plan" as defined in and subject to Section 4975 of the Code for any purpose of ERISA or Section 4975 of the Code or would cause any transaction entered into, or to be entered into, by the Partnership to constitute a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975(c) of the Code.

- 17 -

(b)     A Limited Partner whose Limited Partner Interest is withdrawn, in whole or in part, pursuant to Section 7.2(a) shall be entitled to receive, within a reasonable period of time following the compulsory withdrawal, the Fair Market Value with respect to its Limited Partner Interest.

### 7.3.     Changes in the General Partner.

(a)     Without the approval of the Limited Partners, subject to the provisions of Section 10(2) of the Partnership Law, the General Partner may withdraw as general partner of the Partnership and designate an Affiliate of the General Partner or any successor to the business or assets of the General Partner (the "Designee") to be added or substituted as General Partner.  The Designee shall become and have all of the rights, powers and duties of the General Partner for all purposes of this Agreement.  Except as required by applicable law, changes in the members or officers of the General Partner shall not require the consent of the Limited Partners and shall not dissolve the Partnership.  The General Partner may not be removed other than as required by law.

(b)     In the event of any incapacity or withdrawal of the last remaining General Partner, pursuant to Sections 15(5) and (6) of the Partnership Law, the Partnership shall be dissolved on the date falling 90 calendar days after notice of such event being given by the General Partner to the Limited Partners, unless a Majority in Interest of the Limited Partners approve a new general partner of the Partnership and the continuation of the Partnership upon such terms and conditions as the parties may then agree.

### 7.4.     Restrictions on Transfers of Limited Partner Interests.  No Limited Partner may Transfer a Limited Partner Interest, or any interest therein, unless such Transfer arises by operation of law or has been expressly approved by the General Partner.  The General Partner may withhold such approval in its sole and absolute discretion or may grant such approval on such terms and subject to such conditions as the General Partner may determine.

### 7.5.     Involuntary Transfers of Limited Partner Interests.

(a)     The General Partner may at any time require any Limited Partner to Transfer all or any portion of its Limited Partner Interest by giving not less than five days' Notification to such Limited Partner; provided that no such Notification shall be required with respect to any such Limited Partner if the General Partner has reason to believe that such Limited Partner acquired a Limited Partner Interest as a result of a misrepresentation or that such Limited Partner's ownership of a Limited Partner Interest would cause the Partnership or the General Partner to be in violation of any law or regulation applicable to the Partnership or the General Partner or would result in any of the assets of the Partnership being considered to be assets of any "employee benefit plan" as defined in and subject to ERISA or any "plan" as defined in and subject to Section 4975 of the Code for any purpose of ERISA or Section 4975 of the Code or would cause any transaction entered into, or to be entered into, by the Partnership to constitute a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975(c) of the Code.

(b)     A Limited Partner whose Limited Partner Interest is transferred pursuant to Section 7.5(a) shall be entitled to receive from the transferee, within a reasonable period of time following the compulsory transfer, the amount agreed upon by the transferee and the transferor or, in the absence of such agreement, an amount equal to the Fair Market Value with respect to such Limited Partner Interest. The General Partner will require the transferee to accept such transfer subject to a lien from the transferee until the amounts herein are paid.

- 18 -

**7.6.**    **Obligations of Transferors of Limited Partner Interests**.

(a)    If a Person desires to Transfer a Limited Partner Interest, or an interest therein, pursuant to the provisions of Section 7.4, such Person shall be responsible for compliance with all conditions of Transfer imposed by this Agreement and under applicable law and for any expenses incurred by the Partnership for legal and/or accounting services in connection with reviewing the Transfer or obtaining legal opinions in connection therewith.  Upon the request of the General Partner, a Person desiring to Transfer a Limited Partner Interest, or any interest therein, pursuant to Section 7.4 shall either cause the Partnership to be provided with, or authorize the Partnership to obtain, an opinion of counsel satisfactory to the General Partner that the proposed Transfer complies with the Securities Act and any applicable state securities laws.

(b)    Unless otherwise expressly agreed by the General Partner, no Transfer of a Limited Partner Interest, or any interest therein, other than pursuant to a statutory merger or consolidation of the transferor wherein all duties, responsibilities, liabilities and obligations of the transferor are assumed by a successor corporation by operation of law, shall relieve the transferor of its obligations under this Agreement.

**7.7.**    **Obligations of Transferees of Limited Partner Interests**.

(a)    Prior to the admission to the Partnership, as a Limited Partner, of a Person to whom a Limited Partner Interest, or any interest therein, has been Transferred pursuant to the provisions of this Agreement, such Person (an "Assignee") shall be entitled to share in such profits and losses, to receive such distributions, and to receive such allocations of items of the Partnership's income, gain, deduction, loss and credit, as the transferor would have been entitled to share and receive in respect of the Limited Partner Interest or interest therein so Transferred, but shall not be entitled to become a Limited Partner or to exercise any of the other rights, powers or authority of a Limited Partner until such time as such Assignee is admitted as a Limited Partner in accordance with this Agreement.  Any such assignment agreement shall provide that the Assignee shall be entitled to receive such allocations of the Partnership's income, gain, deduction, loss and credit as the transferor would have been entitled to share and receive had the Limited Partner Interest not been so Transferred.

(b)    No Assignee of a Limited Partner Interest, or any interest therein, shall be admitted to the Partnership as a Limited Partner unless such admission is approved by the General Partner and the General Partner causes the books and records of the Partnership to reflect such admission.  The General Partner may withhold such approval in its sole and absolute discretion or may grant such approval on such terms and subject to such conditions as the General Partner may determine.

(c)    In the case of a Transfer of a Limited Partner Interest, or an interest therein, arising by operation of law, the Successor of the transferor shall be deemed (i) to be bound hereby as an Assignee and (ii) to have assumed all of the duties, responsibilities, liabilities and obligations of the transferor under this Agreement (including under this Article VII) with respect to such Transferred Limited Partner Interest or interest therein, unless the General Partner agrees otherwise.

(d)    A Person admitted to the Partnership as a Limited Partner pursuant to the provisions of Section 7.7(b) shall, to the extent of the Limited Partner Interest, or interest therein, Transferred to such Person, succeed to all of the rights, powers and authority of the transferor Limited Partner under this Agreement in the place and stead of such transferor Limited Partner (which succession, in the event of a pledge, encumbrance, hypothecation or mortgage, may be entered into and become effective at the time of foreclosure or other realization of such pledge or mortgage).

- 19 -

(e)     Unless the General Partner expressly agrees otherwise, any Person to whom a Limited Partner Interest, or an interest therein, is Transferred, whether or not such Person is admitted to the Partnership as a Limited Partner, shall, to the extent of such Limited Partner Interest or interest therein, succeed to the duties, responsibilities, liabilities and obligations of the transferor hereunder, and be subject to the restrictions to which such transferor is subject hereunder (unless such Transfer is a pledge, encumbrance, hypothecation or mortgage which has not theretofore been foreclosed or otherwise realized upon) or except as otherwise provided herein.

**7.8.    Effective Dates of Transfers**.

(a)     Transfers of Limited Partner Interests, or interests therein, pursuant to this Article VII may be made on any day, but for purposes of this Agreement, the effective date of any such Transfer shall be (i) the first day of the month in which such Transfer occurred if such Transfer occurred on or prior to the fifteenth (15th) calendar day of a month or (ii) the first day of the month immediately following the month in which such Transfer occurred, if such Transfer occurred after the fifteenth (15th) calendar day of a month, or such other date determined by the General Partner pursuant to such convention as may be administratively feasible and consistent with applicable law.

(b)     If any Limited Partner Interest, or any interest therein, is Transferred in compliance with the provisions of this Article VII, on any day other than the first day of a calendar year, then each item of the Partnership's income, gain, deduction, loss and credit attributable thereto for such year shall be allocated to the transferor and the transferee by taking into account their varying interests during such year in accordance with Section 706(d) of the Code, using any method permitted thereunder. All distributions pursuant to Section 6.2 attributable to such Transferred Limited Partner Interest or interest therein (i) with respect to which the distribution record date is before the effective date of such Transfer (other than a pledge, encumbrance, hypothecation or mortgage) shall be made to the transferor and (ii) with respect to the first distribution record date after the effective date of such Transfer (other than a pledge, encumbrance, hypothecation or mortgage) shall be paid to the transferee.

**7.9.    Effect of Non-Complying Transfers**.  Any Transfer of any Partnership Interest, or interest therein, that would (a) violate the provisions of this Agreement, (b) violate any of the U.S. Securities Laws or applicable state securities laws, (c) cause the termination of the Partnership's classification as a partnership for U.S. federal income tax purposes, (d) cause the Partnership to be treated as a "publicly traded partnership" taxable as a corporation within the meaning of Section 7704 of the Code and the Treasury Regulations or (e) cause the assets of the Partnership to be treated for any purpose of ERISA or Section 4975 of the Code as assets of any "employee benefit plan" as defined in and subject to ERISA or of any "plan" as defined in and subject to Section 4975 of the Code or would result in a non-exempt "prohibited transaction" as defined in Section 406 of ERISA or Section 4975(c) of the Code, shall be wholly null and void *ab initio* and of no legal force or effect and shall not effectuate the Transfer contemplated thereby.  The Partnership shall have the right to obtain injunctive relief (in addition to and not in lieu of any other remedies available to it) in the event of any breach of the provisions of this Article VII.

## ARTICLE VIII
## OWNERSHIP OF PARTNERSHIP PROPERTY

Title to and beneficial interest in Partnership Property shall be deemed to be held and owned by the General Partner upon trust as an asset of the Partnership, and no Partner or Partners, individually or collectively, shall have any title to or beneficial interest in specific Partnership Property or any portion thereof.  Each Partner irrevocably waives any right that it may have to maintain an action for partition with respect to its interest in the Partnership or any Partnership Property.

Any Partnership Property may be held or registered in the name of the Partnership, the name of the General Partner, the name of any Affiliate of the General Partner, the name of a nominee, or in "street name," as the General Partner may determine; provided that (a) any Partnership Property for which legal title is held in the name of the General Partner or an Affiliate of the General Partner shall be held by the General Partner or such Affiliate on behalf of the General Partner for the use and benefit of the Partnership in accordance with the provisions of this Agreement and (b) Partnership Property shall be recorded as the property of the Partnership on the Partnership's books and records, irrespective of the name in which legal title to such Partnership Property is held.

Any corporation, brokerage firm or transfer agent called upon to transfer any assets to or from the name of the Partnership shall be entitled to rely upon instructions or assignments signed or purporting to be signed by the General Partner or its agents without inquiry as to the authority of the person signing or purporting to sign such instruction or assignment or as to the validity of any transfer to or from the name of the Partnership.

**ARTICLE IX**
**RECORDS AND ACCOUNTING; REPORTS; CONFIDENTIAL INFORMATION**

**9.1.    Partnership Records.**

(a)    The General Partner shall cause the Partnership to maintain complete and accurate books and records of the business of the Partnership.

(b)    Each Partner or its duly authorized representative shall have the right, subject to the provisions of Section 9.1(c) and such other reasonable standards as may be established from time to time by the General Partner (including standards governing what information and documents are to be furnished at what time and location and at whose expense), to obtain from the General Partner from time to time upon reasonable demand (which demand shall be in writing and shall state the purpose thereof) for any purpose reasonably related to such Partner's interest as a Partner:  (i) true and full information regarding the status of the business and financial condition of the Partnership; (ii) promptly after becoming available, a copy of any U.S. federal, state and local income tax returns of the Partnership for each Fiscal Year, if any; (iii) a copy of this Agreement and the Certificate and any amendment and/or restatement hereof or thereof, together with executed copies of any written powers of attorney pursuant to which this Agreement or the Certificate or any amendment and/or restatement hereof or thereof has been executed; and (iv) such other information regarding the affairs of the Partnership as is just and reasonable in the discretion of the General Partner.

(c)    Notwithstanding anything in this Agreement to the contrary, the Limited Partners understand and agree that the General Partner shall have the right to keep confidential from the Limited Partners, for such period of time as the General Partner deems reasonable, any information which the General Partner reasonably believes to be in the nature of trade secrets or other information the disclosure of which the General Partner in good faith believes is not in the best interests of the Partnership or could damage the Partnership or its business or which the Partnership is required by law or by agreement with a third party to keep confidential.

(d)    Each Limited Partner agrees that it will not disclose (and shall require its representatives to forebear from disclosing) to third parties any information of a proprietary nature which is obtained by such Limited Partner pursuant to the provisions of this Section 9.1.

- 21 -

**9.2.**   **Fiscal Year; Accounting Period; Accounting Methods**.

(a)      The Fiscal Year of the Partnership shall end on December 31 of each year, unless the General Partner determines otherwise.

(b)      An Accounting Period shall (i) begin on the day after the close of the preceding Accounting Period and (ii) end on the earlier of the close of each calendar month, the effective date of any resignation or expulsion from the Partnership of a Partner, the effective date of any Transfer of a Partnership Interest or such other day as may be determined by the General Partner.

(c)      The Partnership shall keep its books and records in accordance with the provisions of this Agreement under the accrual method of accounting, and, as to matters not specifically covered in this Agreement, in accordance with GAAP.  The General Partner may also have the financial statements prepared in accordance with GAAP, in order to avoid a qualification, and then reconciled with the Partnership's amortization of organizational and offering expenses.  The General Partner may make adjustments to conform to current or future GAAP for financial reporting purposes.  All matters concerning accounting practices not specifically and expressly provided for by the provisions of this Agreement shall be determined by the General Partner in good faith.  Absent bad faith or manifest error, the General Partner's valuation determinations are conclusive and binding on all Limited Partners, and in any event may not be challenged after the next annual audit.

**9.3.**   **Expense Accruals; Reserves**.

(a)      For purposes of determining the amount of the Partnership's liabilities, the General Partner may estimate expenses that are incurred on a regular or recurring basis over yearly or other periods and treat the amount of any such estimate as accruing in equal proportions over any such period.

(b)      The General Partner may determine to establish such reserves for the Partnership for contingent, unknown or unfixed debts, liabilities or obligations of the Partnership as the General Partner may reasonably deem advisable, as well as for any required tax withholdings, whether or not such reserves are required by GAAP ("Reserves").  Amounts withheld for taxes, as well as taxes paid by the Partnership attributable to a Limited Partner or to such Limited Partner's failure to provide the information described herein will be treated as distributions to such Limited Partner for purposes of the calculations described in Section 6.2.

**9.4.**   **Reports.**

As soon as reasonably practicable after the end of each Fiscal Year, commencing with the Fiscal Year ending December 31, 2011, the General Partner shall cause to be delivered to each Partner a report on the Partnership's operations during such year prepared in accordance with GAAP (subject to Section 9.2(c)).  Such report shall include an audited balance sheet of the Partnership as of the end of such Fiscal Year and audited statements of income and changes in financial position of the Partnership for such Fiscal Year.

**9.5.**   **Tax Returns**.

(a)      The General Partner shall cause all necessary U.S. federal, state and local income tax returns for the Partnership to be prepared and timely filed (subject to the General Partner's discretion to obtain extensions) with the appropriate authorities.  The General Partner, in its sole and absolute discretion, shall determine the accounting methods and conventions under the tax laws of the United

- 22 -

States, the several states and other relevant jurisdictions as to the treatment of items of income, gain, deduction, loss and credit or any other method or procedure related to the preparation of such tax returns. In addition, the General Partner, in its sole and absolute discretion, may cause the Partnership to make (or refrain from making) any and all tax elections permitted by such tax laws, including the election referred to in Section 754 of the Code.

(b)       As soon as reasonably practicable after the end of each Fiscal Year, the General Partner shall cause to be delivered to each Partner such tax information and schedules as shall be necessary for the preparation by each such Person of its U.S. federal income tax return (it being understood and agreed that the tax returns of the Partnership may be delayed so that it may be necessary for the Partners to obtain extensions for the filing of their own tax returns).

(c)       Each Partner agrees in respect of any year in which such Partner had an investment in the Partnership that, unless otherwise agreed by the General Partner, such Partner shall not: (i) treat, on its individual tax returns, any item of income, gain, loss, deduction or credit relating to such investment in a manner inconsistent with the treatment of such item by the Partnership, as reflected on the Schedule K-1 or other information statement furnished by the Partnership to such Partner; or (ii) file any claim for refund relating to any such item based on, or which would result in, any such inconsistent treatment.

(d)       The General Partner is hereby appointed the "Tax Matters Partner" of the Partnership for all purposes pursuant to Sections 6221-6231 of the Code.

**9.6.    Confidential Information.**

In connection with the organization of the Partnership and its ongoing business, the Limited Partners may receive or have access to confidential proprietary information concerning the Partnership including, without limitation, portfolio positions, valuations, information regarding potential investments, financial information and trade secrets (the "Confidential Information"), which is proprietary in nature and non-public.  Without the prior written consent of the General Partner, none of the Limited Partners or any of its affiliates shall disclose or cause to be disclosed any Confidential Information to any person nor use any Confidential Information for its own purposes or its own account, except (i) to its underlying investors, (ii) in monitoring its investment in the Partnership and exercising its rights hereunder and (iii) as otherwise required by any regulatory authority, law or regulation, or by legal process.  Notwithstanding anything in this Agreement, the Limited Partners (and any employee, representative or other agent of such Limited Partner) and the General Partner (and any employee, representative or other agent of the General Partner) may disclose to any and all persons, without limitation of any kind, the U.S. federal and state tax treatment and the U.S. federal and state tax structure of the transactions and all materials of any kind (including opinions or other tax analyses) that are provided to such person relating to such tax treatment and tax structure.  This authorization of tax disclosure is retroactively effective to the commencement of discussions between the Partnership or its representatives and the Limited Partner regarding the transactions contemplated herein.

**ARTICLE X**
**EXCULPATION AND INDEMNIFICATION**

**10.1.    Exculpation.**

(a)       Notwithstanding anything to the contrary set forth in this Agreement, to the extent that, at law or in equity, any General Partner Party has duties (including fiduciary duties) and liabilities relating thereto to the Partnership or any Partner, such General Partner Party shall not be liable

- 23 -

for monetary or other damages to the Partnership or such Partner for such General Partner Party's good faith reliance on the provisions of this Agreement or for Losses sustained or liabilities incurred by the Partnership or such Partner as a result of:  (i) errors in judgment on the part of such General Partner Party, or of any act or omission of such General Partner Party, if such General Partner Party acted without fraud, bad faith, gross negligence (as that term is construed under Delaware law) or willful misconduct; (ii) errors in judgment on the part of any Person, or of any act or omission of any Person, selected by such General Partner Party to perform services for the Partnership (including any general partner and/or investment adviser of and any other service provider to any collective or commingled investment vehicle in the Partnership directly or indirectly invests), provided that, in selecting such Person, such General Partner Party acted without fraud, bad faith, gross negligence (as that term is construed under Delaware law) or willful misconduct; (iii) trade errors, provided that the General Partner Party acted without fraud, bad faith, gross negligence (as that term is construed under Delaware law) or willful misconduct; (iv) circumstances beyond such General Partner Party's control, including the bankruptcy, insolvency or suspension of normal business activities of any bank, brokerage firm or transfer agent holding the Partnership's assets; provided that the General Partner Party acted without fraud, bad faith, gross negligence or willful misconduct; or (v) failure to obtain the lowest negotiated brokerage commission rates, or to combine or arrange orders so as to obtain the lowest brokerage commission rates, with respect to any transaction on behalf of the Partnership, or failure to recapture, directly or indirectly, any brokerage commissions for the benefit of the Partnership, if such failure was not the result of fraud, bad faith, gross negligence or willful misconduct.

(b)     Each General Partner Party shall be fully protected in relying in good faith upon the books and records of the Partnership and upon such information, opinions, reports or statements presented to the Partnership by any of its Partners, officers or agents (including legal counsel, accountants, auditors, appraisers, investment bankers and other independent experts) as to matters such General Partner Party reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Partnership, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits or losses of the Partnership or any other facts pertinent to the existence and amount of assets from which distributions to Partners might properly be made.

(c)     Notwithstanding the foregoing, no exculpation of a General Partner Party shall be permitted hereunder to the extent such exculpation would be inconsistent with the requirements of the U.S. Securities Laws or any other applicable law.

**10.2.    Indemnification**.

(a)     To the fullest extent permitted by law, the Partnership shall indemnify each General Partner Party (each, for purpose of this Article XI, an "Indemnitee") from and against any and all Losses, except to the extent that it is finally adjudicated that an act or omission of the Indemnitee was material to the matter giving rise to such Losses and was committed by such Indemnitee with fraud, bad faith, willful misconduct or gross negligence (as that term is construed under Delaware law).  The termination of any proceeding by judgment, order or settlement does not create a presumption that the Indemnitee did not meet the requisite standard of conduct set forth in this Section 10.2(a).

(b)     Reasonable expenses incurred by an Indemnitee who is a party or witness in a proceeding shall be paid or reimbursed by the Partnership in advance of the final disposition of the proceeding upon receipt by the Partnership of (i) a written affirmation by such Indemnitee of such Indemnitee's good faith belief that the standard of conduct necessary for indemnification by the Partnership, as authorized in this Section 10.2, has been met and (ii) a written undertaking by or on behalf

- 24 -

of such Indemnitee to repay the amount paid or reimbursed if it shall ultimately be determined that such Indemnitee is not entitled to be indemnified hereunder.

(c)    The indemnification provided by this Section 10.2 shall be in addition to any other rights to which a General Partner Party may be entitled under any agreement, as a matter of law or otherwise, and shall continue as to a General Partner Party who has ceased to serve in such capacity and shall also be for the benefit of such General Partner Party's Successors, but shall not be deemed to create any rights for the benefit of any other Persons; provided that this Section 10.2(c) shall not be construed to entitle any Indemnitee to receive any amount under the provisions of this Article XI in respect of any Losses paid or incurred by such Indemnitee to the extent that, after giving effect to the receipt of such amount and the receipt by such Indemnitee of any other payments in respect of such Losses, from whatever source or sources, such Indemnitee shall have recovered an aggregate amount in excess of such Losses.

(d)    Notwithstanding the foregoing, no indemnification of a General Partner Party shall be permitted hereunder to the extent such indemnification would be inconsistent with the requirements of the U.S. Securities Laws or any other applicable law.

(e)    The Partnership may purchase and maintain insurance, on behalf of any one or more General Partner Parties, against any liability that may be asserted against or expenses that may be incurred by them in connection with the activities of the Partnership, regardless of whether the Partnership would have the power to indemnify any such General Partner Party against such liability under the provisions of this Agreement.

(f)    An Indemnitee shall not be denied indemnification in whole or in part under this Section 10.2 solely because the Indemnitee had an interest in the transaction with respect to which the indemnification applies.

**10.3.    <u>Notification of Claims</u>**.    If a General Partner Party believes that it is entitled to indemnification under this Article XI, such General Partner Party shall promptly give Notification to the Partnership describing such claim for indemnification, the amount thereof, if known, and the method of computation, all with reasonable particularity and containing a reference to the provisions of this Agreement in respect of which such claim shall have occurred; provided that the omission by such General Partner Party to give Notification as provided herein shall not relieve the Partnership of its indemnification obligation under this Article XI except to the extent that the Partnership is materially damaged as a result of such failure to give Notification.    Any General Partner Party entitled to indemnification hereunder shall use its reasonable best efforts to minimize the amount of any claim for indemnification hereunder.

**10.4.    <u>Third Party Claims</u>**.    In the event of any claim for indemnification hereunder resulting from or in connection with any claim or legal proceeding by a third party, the Indemnitee or Indemnitees claiming such indemnification shall give Notification thereof to the Partnership not later than twenty (20) Business Days prior to the time any response to the asserted claim is required, if possible, and in any event within fifteen (15) Business Days following the date such Indemnitee has actual knowledge thereof; provided that the omission by such Indemnitee or Indemnitees to give Notification as provided herein shall not relieve the Partnership of its indemnification obligation under this Article XI except to the extent that the Partnership is materially damaged as a result of such failure to give Notification.    In the event of any such claim for indemnification by an Indemnitee or Indemnitees resulting from or in connection with a claim or legal proceeding by a third party, the Partnership may, at its sole cost and expense, assume the defense thereof; provided that counsel for the Partnership, who shall conduct the defense of such claim or legal proceeding, shall be reasonably satisfactory to such Indemnitee or Indemnitees; and provided,

- 25 -

further, that if the defendants in any such actions include both such Indemnitee or Indemnitees and the Partnership, and such Indemnitee or Indemnitees shall have reasonably concluded that there may be legal defenses or rights available to it or them which have not been waived and are in actual or potential conflict with those available to the Partnership, such Indemnitee or Indemnitees shall have the right to select one law firm reasonably acceptable to the Partnership to act as separate counsel, on behalf of such Indemnitee or Indemnitees, at the expense of the Partnership. Unless such Indemnitee or Indemnitees are represented by separate counsel pursuant to the second proviso of the immediately preceding sentence, if the Partnership assumes the defense of any such claim or legal proceeding, it shall not consent to entry of any judgment, or enter into any settlement, that (a) is not subject to indemnification in accordance with the provisions in this Article XI, (b) provides for injunctive or other non-monetary relief affecting such Indemnitee or Indemnitees or (c) does not include as an unconditional term thereof the giving by each claimant or plaintiff to such Indemnitee or Indemnitees of a release from all liability with respect to such claim or legal proceeding, without the prior written consent of such Indemnitee or Indemnitees (which consent, in the case of clauses (b) and (c), shall not be unreasonably withheld or delayed); and provided further, that, unless such Indemnitee or Indemnitees is or are represented by separate counsel pursuant to the second proviso of the immediately preceding sentence, such Indemnitee or Indemnitees may, at its or their own expense, participate in any such proceeding with the counsel of their choice. So long as the Partnership is in good faith defending such claim or proceeding, such Indemnitee or Indemnitees shall not compromise or settle such claim or proceeding without the prior written consent of the General Partner, which consent shall not be unreasonably withheld or delayed. If the Partnership does not assume the defense of any such claim or litigation in accordance with the provisions hereof, such Indemnitee or Indemnitees may defend against such claim or litigation in such manner as it or they may deem appropriate, including settling such claim or litigation (after giving prior Notification of the same to the Partnership and obtaining the prior written consent of the General Partner, which consent shall not be unreasonably withheld or delayed) on such terms and subject to such conditions as such Indemnitee or Indemnitees may deem appropriate, and the Partnership will promptly indemnify such Indemnitee or Indemnitees in accordance with the provisions of this Article XI.

10.5. **Trading Errors**. All risks relating to transactions ordered by the Investment Manager on behalf of the Partnership (including any trading or system error that has occurred in good faith) shall be borne by the Partnership as principal and, accordingly, all gains or losses accruing shall belong to or be borne by the Partnership; provided that, if a trading error resulting in losses is due to an action or omission of a General Partner Party not meeting the standard of conduct set forth in Section 10.1, such loss shall be borne by such General Partner Party.

10.6. **Limit on Liability of Limited Partners**. The indemnification set forth in this Article XI shall in no event cause the Limited Partners to incur any personal liability, nor shall it result in any liability of the Limited Partners to any third party.

### ARTICLE XI
### AMENDMENT; CONSENTS FOR OTHER PURPOSES

11.1. **Amendments Not Requiring Consent of Limited Partners**. Subject to the provisions of Sections 11.2 and 11.4:

(a)    The General Partner, without obtaining the authorization or approval of any Limited Partner and without giving prior Notification to any Limited Partner, may amend this Agreement at any time and from time to time, whether by changing any one or more of the provisions hereof, removing any one or more provisions herefrom, or adding one or more provisions hereto, to the extent necessary, in the reasonable judgment of the General Partner, to:

(i)  cause the provisions of Article V to comply with the provisions of Section 704 of the Code and the Treasury Regulations thereunder;

(ii)  otherwise cause the provisions of this Agreement to comply with any requirement, condition or guideline contained in any order, directive, opinion, ruling or regulation of a U.S. federal or state agency or contained in U.S. federal or state law or any requirement of Cayman Islands law or regulation;

(iii)  ensure the Partnership's continuing classification as a partnership for U.S. federal income tax purposes;

(iv)  prevent the Partnership from being treated as a "publicly traded partnership" taxable as a corporation within the meaning of Section 7704 of the Code and the Treasury Regulations;

(v)  prevent the assets of the Partnership from being treated for any purpose of ERISA or Section 4975 of the Code as assets of any "employee benefit plan" as defined in and subject to ERISA or of any "plan" as defined in and subject to Section 4975 of the Code (or any corresponding provisions of succeeding law);

(vi)  prevent the Partnership from being required to register as an "investment company" under the Investment Company Act or otherwise violate the Investment Company Act;

(vii)  prevent the Partnership from engaging in a non-exempt "prohibited transaction" (within the meaning of Section 406 of ERISA or Section 4975(c) of the Code);

(viii)  add to the obligations of the General Partner for the benefit of the Partnership or the Limited Partners at no expense to the Partners or the Partnership;

(ix)  reflect the admission, substitution or termination of Partners after the date hereof in accordance with the provisions of this Agreement;

(x)  cure any ambiguity in this Agreement or correct any provision in this Agreement that is manifestly incorrect;

(xi)  provide that any one or more Additional General Partners may possess and exercise any one or more of the rights, powers and authority of a General Partner hereunder; or

(xii)  conform to the Bankruptcy plan of reorganization of the Initial Limited Partner or to more fully reflect the terms of such plan.

(b)  Upon giving Notification to the Limited Partners, but without obtaining the authorization or approval of any Limited Partner, the General Partner may amend this Agreement at any time and from time to time, whether by changing any one or more of the provisions hereof, removing any one or more provisions herefrom, or adding one or more provisions hereto, for such purpose or purposes

- 27 -

as the General Partner may deem necessary, appropriate, advisable or convenient; provided that, in the General Partner's reasonable judgment, such amendment could not reasonably be expected to have a material adverse affect on the Partnership or any Limited Partner.

**11.2.** **Amendments Requiring Consent; Consent of the Partnership**.

(a)    Subject to the provisions of Section 11.4, the General Partner may amend this Agreement at any time and from time to time, whether by changing any one or more of the provisions hereof, removing any one or more provisions herefrom, or adding one or more provisions hereto, in a manner that materially adversely affects or could reasonably be expected to have a material adverse effect on the Partnership or the Limited Partners; provided that the General Partner may not make any such amendment without (i) giving Notification to the Limited Partners, at least thirty (30) days prior to the implementation of such amendment, setting forth all material facts relating to such amendment and (ii) obtaining the Consent of the Partnership to such amendment prior to the implementation thereof.

(b)    A Limited Partner who is not a General Partner Party shall be deemed to approve any Consent Transaction if such Limited Partner either (i) affirmatively approves such Consent Transaction prior to the completion, consummation or implementation thereof or (ii) fails to give Notification to the Partnership of its objection to such Consent Transaction prior to the completion, consummation or implementation thereof.  Any Limited Partner who is required to withdraw from the Partnership pursuant to the provisions of this Agreement prior to the completion, consummation or implementation of any Consent Transaction shall thereupon automatically cease to have any right to approve or withhold its approval of such Consent Transaction and shall not be considered a Limited Partner for purposes of determining whether the Consent of the Partnership has been obtained, notwithstanding that such Limited Partner may have objected to such Consent Transaction.

**11.3.** **Waiver; Other Agreements**.  The General Partner has general authority to waive the provisions of this Agreement with respect to any Limited Partner or all Limited Partners either pursuant to a written agreement with such Limited Partner as contemplated below or otherwise; provided that any such waiver will not, in the good faith judgment of the General Partner, have a material adverse effect on the Partnership or the Limited Partners.  The Partnership or the General Partner may from time to time enter into side letters or other written agreements with any Limited Partner (without the consent of any other person, including any other investor) providing for various preferential terms; provided that any such preferential terms will not, in the good faith judgment of the General Partner, have a material adverse effect on the Partnership or the Limited Partners.  Unless otherwise agreed with a Limited Partner, none of the Partnership or the General Partner will be required to notify the other Limited Partners of any such letters or agreements or offer to the other Limited Partners the benefit of any provisions set forth therein.

**11.4.** **Certain Amendments Requiring Consent of Affected Limited Partners**.  Notwithstanding any other provision of this Article XI, this Agreement may not be amended so as to: (i) modify the limited liability of a Limited Partner, without the consent of such Limited Partner; or (ii) materially reduce the participation of a Limited Partner in allocations made to such Limited Partner's Capital Account or the distributions made by the Partnership to such Limited Partner as set forth herein, without the consent of such Limited Partner.

**11.5.** **Consents for Other Purposes**.  The General Partner may from time to time determine to submit to the Partnership, for its approval, actions that are not required to be approved by the Partnership or the Limited Partners pursuant to the provisions of this Agreement.  Any such action will be deemed to be approved by the Partnership if (a) no later than thirty (30) days prior to the proposed effectiveness of such action, the General Partner gives Notification to the Limited Partners describing such action in

- 28 -

reasonable detail, and (b) prior to the effectiveness of such action, the General Partner obtains the Consent of the Partnership to such action.

**11.6.**  **Amendments to Amendment Provisions**,  Notwithstanding anything contained herein, the General Partner shall not amend the provisions of this Article XI without obtaining the Consent of the Partnership; provided that the Partnership shall not amend Section 11.4 without the unanimous consent of the Limited Partners.

## ARTICLE XII
## DISSOLUTION AND WINDING UP

**12.1.**  **Events Causing Dissolution**.  The Partnership shall be wound-up and thereafter dissolved in accordance with Section 15(1) of the Partnership Law upon the first to occur of the following events and, except as otherwise required by applicable law, no other event shall cause the dissolution of the Partnership:

       (a)      the Termination Date;

       (b)      the General Partner declares in writing that the Partnership shall be dissolved and gives Notification thereof to the Limited Partners;

       (c)      subject to Section 7.3, the Bankruptcy of the General Partner; provided that no such Bankruptcy shall cause the dissolution of the Partnership if at the time of such Bankruptcy there is at least one other general partner of the Partnership and such other general partner carries on the business of the Partnership (it being understood and agreed that this Agreement shall be deemed to permit the business of the Partnership to be carried on by such other general partner in the event of the Bankruptcy of a General Partner) or a new general partner is appointed pursuant to Section 7.3; or

       (d)      the entry of a decree of judicial dissolution of the Partnership.

**12.2.**  **Winding Up**.  Immediately prior to the Partnership being dissolved pursuant to Section 12.1, it shall be wound up in the manner set forth below.

       (a)      The winding up of the Partnership shall be carried out by a liquidator (the "Liquidator").  The Liquidator of the Partnership shall be the General Partner or a Person selected by the General Partner.  The Liquidator shall be considered an Indemnitee for purposes of Article XI.

       (b)      In winding up the Partnership, the Liquidator shall possess full, complete and exclusive right, power and authority, in the name of and for and on behalf of the Partnership to do or take any one or more of the following things or actions, without affecting the liability of Partners and without imposing liability on the Liquidator (and shall, to the extent required by the Partnership Law or otherwise required by law, do or take the following things or actions):

       (i)      prosecute and defend suits, whether civil, criminal, administrative or investigative, and other claims, actions or proceedings;

       (ii)      collect Partnership Properties, including debts, liabilities and obligations owed to the Partnership;

       (iii)      gradually settle and close the business and affairs of the Partnership;

NEWYORK 8029113 v6 (2K)

(iv)    sell, retire or otherwise dispose of and convey Partnership Properties, and in connection therewith determine the timing, manner and terms of any such sale, retirement or other disposition, having due regard for the activity and condition of the relevant market and general financial and economic conditions;

(v)    exercise all of the rights, powers and authority conferred upon the General Partner and on behalf of the General Partner under the provisions of this Agreement to the extent necessary, appropriate, advisable or convenient in the Liquidator's reasonable judgment to perform its duties, responsibilities and obligations under this Article XII (it being understood and agreed that the exercise of any one or more of such rights, powers or authority shall not result in the Liquidator being deemed to be a general partner of the Partnership);

(vi)    pay, out of the proceeds of the sale, retirement or other disposition of Partnership Properties, all reasonable selling costs and other expenses (including the compensation of the Liquidator as provided in Section 12.3) incurred in connection with the winding up of the Partnership;

(vii)    (A) pay or make reasonable provision to pay all claims and obligations, including all contingent, conditional or unmatured contractual claims, known to the Partnership; (B) make such provision as will be reasonably likely to be sufficient to provide compensation for any claim against the Partnership which is the subject of a pending action, suit or proceeding to which the Partnership is a party; and (C) make such provision as will be reasonably likely to be sufficient to provide compensation for claims that have not been made known to the Partnership or that have not arisen but that, based on facts known to the Partnership, are likely to arise or to become known to the Partnership within ten (10) years after the date of dissolution or termination (any claims or obligations for which provision is so made by the Liquidator being referred to herein as "Liquidation Reserves");

(viii)    distribute assets to creditors of the Partnership in accordance with the provisions of Section 12.4(a)(i);

(ix)    distribute any remaining assets to Partners and former Partners in accordance with the provisions of Sections 12.4(a)(ii) and 13.4(a)(iii); and

(x)    prepare, execute, swear to, acknowledge, deliver, publish and file and record in the appropriate public offices, such certificates, instruments and other documents (including tax returns) that in the Liquidator's reasonable judgment are necessary, appropriate, advisable or convenient under any applicable law, to effect the winding up of the Partnership.

**12.3.**   **Compensation of Liquidator**.  The Liquidator shall be entitled to receive reasonable compensation from the Partnership, but only from the Partnership's assets, for its services as liquidator.

**12.4.**    **Distribution of Property and Proceeds of Sale Thereof**.

(a)    Upon completion of all desired sales, retirements and other dispositions of Partnership Property on behalf of the Partnership, the Liquidator shall distribute the proceeds of such sales, retirements and dispositions, and any Partnership Property that is to be distributed in kind, in the following order of priority:

(i)    to pay or make reasonable provision for the payment (through the Liquidation Reserves) of the debts, liabilities and obligations of the Partnership to creditors of the Partnership, including, to the extent permitted by applicable law, Partners and former Partners who are creditors of the Partnership (other than (A) debts, liabilities and obligations in respect of which provision has already been made through the Liquidation Reserves and (B) liabilities for distributions to Partners and former Partners;

(ii)    to satisfy liabilities of the Partnership to Partners and former Partners for distributions; and

(iii)    to the Partners *pro rata* based on their Limited Partner Interest for which a complete distribution has not been made pursuant to Section 6.2.

(b)    A Person who receives a distribution in violation of the Partnership Law shall be liable to the Partnership for the amount of such distribution if the Person had knowledge of such violation at the time of such distribution; provided that the Liquidator may compromise or waive any such liability on such terms and subject to such conditions as the Liquidator may determine.

(c)    All distributions required under Section 12.4(a) shall be made by the end of the Fiscal Year in which the completion of the winding up of the Partnership occurs or, if later, within ninety (90) days after the date of such completion.

(d)    If there are sufficient assets to satisfy the claims of all priority groups specified above, such claims shall be paid in full, and any such provision for payment shall be made in full.  If there are sufficient assets to satisfy the claims of one or more but not all priority groups specified above, the claims of the highest priority groups that may be paid or provided for in full shall be paid or provided for in full, before paying or providing for any claims of a lower priority group.  If there are insufficient assets to pay or provide for the claims of a particular priority group specified above, such claims shall be paid or provided for ratably to the claimants in such group to the extent of the assets available to pay such claims.

(e)    Amounts in the Liquidation Reserves shall be paid to creditors of the Partnership as set forth in Section 12.4(a)(i).  Any amounts remaining in the Liquidation Reserves after such payments shall be paid as provided in Sections 12.4(a)(ii) and 13.4(a)(iii).

**12.5.**    **Final Audit**.  Within a reasonable time following the completion of the winding up of the Partnership (excluding, for purposes of this Section 12.5, the liquidation of the related Liquidation Reserves), the Liquidator shall furnish to each Partner a statement setting forth the assets and the liabilities of the Partnership as of the date of such completion and each Partner's share of distributions pursuant to Section 12.4.

**12.6.**    **Deficit Capital Accounts**.  Notwithstanding anything to the contrary contained in this Agreement, and notwithstanding any custom or rule of law to the contrary,  to the extent that the deficit, if

- 31 -

any, in any Partner's Capital Account results from or is attributable to deductions and losses of the Partnership (including non-cash items such as depreciation), or distributions of money pursuant to this Agreement to Partners, upon termination of the Partnership such deficit shall not be an asset of the Partnership and such Partner shall not be obligated to contribute such amount to the Partnership to bring the balance of such Capital Account to zero.

**ARTICLE XIII**
**MISCELLANEOUS**

**13.1.    Construction and Governing Law.**

(a)    This Agreement contains the entire understanding among the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements, understandings, arrangements, inducements or conditions, express or implied, oral or written, between or among any of the parties hereto with respect to the subject matter hereof.

(b)    All provisions of this Agreement, and all questions relating to (i) the validity, interpretation, application or enforcement of such provisions (including provisions that limit or restrict duties, including fiduciary duties, responsibilities, liabilities, obligations or actions), (ii) the duties, responsibilities, liabilities or obligations of the General Partner and/or the Partnership to any one or more Partners under this Agreement or the Partnership Law, (iii) the duties, responsibilities, liabilities or obligations of any one or more Partners to the General Partner and/or the Partnership under this Agreement or the Partnership Law, (iv) the duties, responsibilities, liabilities or obligations of any one or more Limited Partners to any one or more other Limited Partners under this Agreement or the Partnership Law, (v) the rights, powers or authority of, or limitations or restrictions on, the General Partner and/or the Partnership under this Agreement or the Partnership Law, and/or (vi) the rights, powers, authority, privileges or preferences of, or limitations or restrictions on, any one or more Partners under this Agreement or the Partnership Law, shall be governed by and construed and administered in accordance with the internal substantive laws of the Cayman Islands without regard to principles of conflict of laws.

(c)    In case any one or more of the provisions contained herein shall, for any reason, be found or held invalid, illegal or unenforceable in any respect in any jurisdiction, such provision shall be ineffective to the extent, but only to the extent, of such invalidity, illegality or unenforceability without invalidating the remainder of such invalid, illegal or unenforceable provision or provisions or any other provisions of this Agreement in that or any other jurisdiction, unless such a construction would be unreasonable.

(d)    In applying the provisions of Sections 13.1(a), (b) and (c):

(i)    to the extent this Agreement modifies or nullifies any provision of the Partnership Law that would apply in the absence of such modification or nullification, as permitted by the Partnership Law (any such provision of the Partnership Law being referred to herein as a "default" provision), such modification or nullification shall apply in preference to such "default" provision;

(ii)    to the extent there is a direct conflict between the provisions of this Agreement and any provision of the Partnership Law that may not lawfully be modified or nullified by agreement among the parties, such provision of the Partnership Law shall control; and

- 32 -

(iii)      if the General Partner shall determine, with the advice of counsel, that any provision of this Agreement is in conflict with (A) the U.S. Securities Laws, (B) the Code or (C) other applicable laws, rules, regulations or orders, whether generally or in a particular application, the conflicting provision or such particular application thereof, as the case may be, shall not be deemed to constitute a part of this Agreement for so long as such conflict exists (provided that such determination shall not affect any of the remaining provisions of this Agreement or any lawful application of any provision, or render invalid or improper any action taken or omitted prior to such determination).

(e)      In construing the meaning or application of the U.S. Securities Laws, the General Partner may consider the effect of any applicable order or interpretative release issued by the U.S. Securities and Exchange Commission, or any applicable "no action" or interpretative position issued by the staff of the U.S. Securities and Exchange Commission, that modifies or interprets the U.S. Securities Laws.

(f)      If any provision of this Agreement appears to the General Partner to be ambiguous or inconsistent with any other provision hereof, the General Partner may construe such provision in such manner as it reasonably may determine in good faith, and such construction shall be conclusive and binding as to the meaning to be given to such provision.

(g)      In each case where this Agreement contemplates that (i) a particular thing may not be done or a particular action may not be taken without the approval, agreement, vote or consent of one or more Persons, (ii) a Person may make a particular designation or determination or (iii) a Person may otherwise do or refrain from doing a particular thing or take or refrain from taking a particular action, such Person or Persons shall be free to give or withhold any such approval, agreement, vote or consent, to make any such designation or determination, to do or refrain from doing any such thing, or to take or refrain from taking any such action, in its or their sole and absolute discretion, except where this Agreement expressly requires otherwise or as otherwise required by law.  Without limiting the generality of the foregoing, in any case herein where it is provided that the General Partner shall or may take a particular action, do a particular thing or make a particular determination, and such case does not expressly provide for Limited Partner authorization or approval of such action, thing or determination, the General Partner shall possess full power and authority to take such action, to do such thing or to make such determination without obtaining any prior or subsequent authorization or approval of any Limited Partner (and the General Partner may take such action, do such thing or make such determination in its sole discretion on such terms and in such manner as it may deem appropriate, unless the context requires otherwise), unless otherwise required by law.

(h)      Each reference in this Agreement to a particular statute or regulation, or provision thereof, shall be deemed to refer to such statute or regulation, or provision thereof, or to any superseding statute or regulation, or provision thereof, as is from time to time in effect, as well as to applicable regulations thereunder.

(i)      In computing the number of days for purposes of this Agreement, all days shall be counted, including Saturdays, Sundays and holidays; provided that if the final day of any time period falls on a Saturday, Sunday or holiday on which national banks are or may elect to be closed in New York, New York, then the final day shall be deemed to be the next day which is not a Saturday, Sunday or such holiday.

(j)    Except as otherwise stated in this Agreement, references in this Agreement to Articles and Sections are to Articles and Sections of this Agreement.

(k)    The headings to Articles and Sections are for convenience of reference only and shall not form part of or affect the meaning or interpretation of this Agreement.

(l)    Where appropriate, each definition and pronoun in this Agreement includes the singular and the plural, and reference to the neuter gender includes the masculine and feminine, and vice versa.

(m)    As used in this Agreement, the word "including" shall mean "including without limitation," the word "or" is not exclusive, and the words "herefrom," "herein," "hereof," "hereto," and "hereunder" refer to this Agreement as a whole.

(n)    The express provisions hereof control and supersede any course of performance or usage of the trade inconsistent with any of the provisions hereof.

**13.2.    Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument.  This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the parties reflected hereon as the signatories.  Any instrument or other document in writing that has been duly executed by or on behalf of a Person in which such Person has agreed with the General Partner and the existing Limited Partners to be bound hereby as a Limited Partner shall be considered a counterpart for purposes of the foregoing.

**13.3.    Binding Effect**.  This Agreement shall be binding upon and shall inure to the benefit of the parties (and Indemnitees as provided under Article X) and their respective Successors.

**13.4.    Offset**. Whenever the Partnership is to pay any sum to any Partner, any amounts such Partner owes to the Partnership may be deducted from that sum before payment.

**13.5.    Remedies for Breach; Effect of Waiver or Consent**.  A waiver or consent, express or implied, of or to any breach or default by any Person in the performance by that Person of his duties, responsibilities or obligations with respect to the Partnership is not a consent to or waiver of any other breach or default in the performance by that Person of the same or any other duties, responsibilities or obligations of that Person with respect to the Partnership.  Failure on the part of a Person to complain of any act of any other Person or to declare any other Person in default with respect to the Partnership, irrespective of how long that failure continues, does not constitute a waiver by that Person of its rights with respect to that default until the applicable statute-of-limitations period has run.

**13.6.    Further Assurances**.    In connection with this Agreement and the transactions contemplated hereby, each Limited Partner shall, promptly upon the request of the General Partner and at the expense of the Partnership: (i) execute and deliver, or cause to be executed and delivered, such additional instruments, certificates and other documents; (ii) make, or cause to be made, such additional filings, recordings and publishings; (iii) provide, or cause to be provided, such additional information; and (iv) do, or cause to be done, such further acts and things, in each case as may reasonably be determined by the General Partner to be necessary, appropriate, advisable or convenient to carry out the intent and purpose of this Agreement and as are not inconsistent with the provisions hereof.  Without limiting the generality of the foregoing, each Limited Partner shall, promptly upon the request of the General Partner, execute and deliver or cause to be executed and delivered such certificates, instruments and other

- 34 -

documents, and make or cause to be made such filings, recordings and publishings, as the General Partner reasonably determines to be necessary, appropriate, advisable or convenient to comply with the requirements for the operation of the Partnership as a Cayman Islands exempted limited partnership under the Partnership Law and the qualification of the Partnership to do business in any jurisdiction in which the Partnership owns property or conducts business.

NEWYORK 8029113 v6 (2K)

IN WITNESS WHEREOF, the undersigned have executed this Amended and Restated Limited Partnership Agreement as a deed on the date first above written.

**General Partner:**

Z-CDO Liquidation Fund GP, L.L.C.
As general partner of the Partnership

By: Anchorage Capital, L.L.C.,
its Managing Member

By: Anchorage Capital Management, L.L.C.,
its Managing Member

By: _____          Initial Limited Partner:
      Name:  [_____]
      Title:  Managing Member          Zais Investment Grade Limited VII

                                       By:  _____

Witnessed by: _____          Witnessed by: _____