# PLAN EXHIBIT E

## FORM OF NEWCO INVESTMENT MANAGEMENT AGREEMENT

INVESTMENT MANAGEMENT AGREEMENT

THIS INVESTMENT MANAGEMENT AGREEMENT, dated as of [____] [__], 2011 (the "Agreement"), is by and between Z-CDO Liquidation Fund, L.P., a Cayman Islands exempted limited partnership (the "Partnership"), and Anchorage Capital Group, L.L.C., a Delaware limited liability company (the "Investment Manager").

W I T N E S S E T H :

WHEREAS, the terms and conditions of the Partnership are set forth in the Limited Partnership Agreement dated as of [____] [__], 2011 (as the same may be amended, modified or supplemented from time to time, the "Partnership Agreement"); and

WHEREAS, pursuant to the Partnership Agreement, the Partnership is authorized to appoint and enter into a contract with the Investment Manager to provide certain administrative and management services to the Partnership as set forth herein.

NOW, THEREFORE, in consideration of the premises and mutual covenants hereinafter set forth, the parties hereto agree as follows:

1.  Appointment.  Pursuant to the Partnership Agreement, the Partnership hereby appoints the Investment Manager to act as investment manager in respect of the Partnership for the period and on the terms set forth in this Agreement.  The Investment Manager accepts such appointment and agrees to render and be responsible for the services herein set forth.  To the extent that any provisions of this Agreement are inconsistent with any provisions of the Partnership Agreement, the provisions of the Partnership Agreement shall control.

2.  Defined Terms.  Capitalized terms in this Agreement, unless otherwise defined, have the meanings ascribed to them in the Partnership Agreement.

3.  Authority of the Investment Manager.  (a)  The Investment Manager shall manage the Partnership Property including the disposition thereof and execution of agreements relating thereto, in accordance with the Partnership's Partnership Agreement.  Subject to the foregoing, the authority granted hereby to the Investment Manager includes the power to:

(i)  Determine from time to time the timing, manner and price to liquidate the Partnership Property, what contracts will be entered into by the Partnership and what portion of the proceeds of liquidation of Partnership Property will be invested in cash equivalents or held uninvested as cash;

(ii)  Do any and all acts and exercise all rights, powers, privileges and other incidents of ownership or possession with respect to the Partnership Property or assets held or owned by the Partnership, including, without limitation, the right to possess, lend, transfer, mortgage, pledge or otherwise deal in, and secure the payment of obligations of the Partnership by mortgage upon, or hypothecation or pledge of, all or part of the Partnership Property, whether at the time owned or thereafter acquired and to participate in arrangements with creditors, institute and settle or compromise suits and administrative proceedings and other similar matters, all in accordance with the Partnership Agreement;

(iii) For purposes of the investment of part or the entire Partnership Property in cash equivalents, open, maintain and close accounts with brokers, which power shall include the authority to issue all instructions and authorizations to brokers regarding securities and money therein and to pay, or authorize the payment and reimbursement of, brokerage commissions, which may be in excess of the lowest rates available, which are paid to brokers who execute transactions for the account of the Partnership and who supply or pay the cost of research and brokerage services; provided, that it determines in good faith that such amount of commission is reasonable in relation to the value of the brokerage and research services provided by such broker, viewed in terms of either that particular transaction or its overall responsibilities with respect to the accounts as to which it exercises investment discretion, and that such services would benefit the Partnership and that such services are consistent with Section 28(e) of the Securities Exchange Act of 1934, as amended;

(iv) Do any and all acts on behalf of the Partnership and exercise all rights of the Partnership with respect to its interest in any person, firm, corporation or other entity, including without limitation the voting of securities, the institution and settlement or compromise of suits and administrative proceedings and other similar matters;

(v) Open, maintain and close bank accounts and draw checks or other orders for the payment of monies;

(vi) Organize one or more entities to hold or liquidate the Partnership Property and in that regard the Investment Manager or an affiliate thereof may serve as an advisor to such entities;

(vii) Authorize any partner, director, officer, employee or other agent of the Investment Manager or agent or employee of the Partnership to act for and on behalf of the Partnership in all matters incidental to the foregoing;

(viii) Borrow monies from brokers, banks, and any other parties, which may include the Investment Manager, its respective affiliates or other funds managed by the Investment Manager, including to cover expenses and make distributions, raise monies or utilize any other forms of leverage, issue, accept, endorse and execute promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness, and grant or issue guarantees, all in accordance with the Partnership Agreement; and

(ix) Do any other act that the Investment Manager deems necessary or advisable in connection with the implementation of the Partnership's investment objectives to liquidate the Partnership Property.

(b) The liquidation of Partnership Property shall be exclusively within the control and discretion of the Investment Manager.

(c) The Investment Manager may perform its obligations hereunder itself or through its affiliates, which may serve as sub-advisors so long as no fees are payable under this

agreement. If the Investment Manager is to provide the Partnership with any service under this Agreement through affiliates, the identity of such affiliates shall be provided to the Partnership.

(d) Notwithstanding any other provision set forth herein, the Investment Manager shall have no right to withdraw or possess any funds or securities from any account of the Partnership or derived from the liquidation of the Partnership Property except to transfer to another account held in the name of the Partnership or to a broker or counterparty of the Partnership.

4. <u>Compensation; Expenses</u>. (a) The Investment Manager shall not be paid any compensation for the services to be rendered by it hereunder.

(b) The Investment Manager shall pay, without reimbursement by the Partnership, (i) all of its own overhead expenses incurred in managing the Partnership or otherwise, including, but not limited to, all costs and expenses on account of rent, supplies, postage and delivery, equipment, furniture, salaries, wages, bonuses and other employee benefits and (ii) all legal, accounting and other expenses (including attorney's fees) incurred in connection with the start-up and organization of the Investment Manager.

(c) The Investment Manager is authorized to incur and pay in the name and on behalf of the Partnership all expenses that it deems necessary or advisable. The Partnership shall promptly pay or reimburse the Investment Manager for all costs and expenses associated with the conduct, management, business and liquidation of the Partnership Property, including, without limitation, all set-up costs, legal, accounting, investment and other professional services costs.

5. <u>Delegation of Authority; Attorney-in-Fact</u>. The Partnership hereby delegates to the Investment Manager all powers, duties and responsibilities with regard to the management, administrative and liquidation services to be provided to the Partnership as contemplated by <u>Section 3</u> and hereby appoints the Investment Manager as the attorney-in-fact of the Partnership with full authority in the Partnership's name on behalf of the Partnership to perform the management, administrative and liquidation services described in <u>Section 3</u>.

6. <u>Confidential Information</u>. It is the essence of this Agreement that all information regarding the operation and liquidation of the Partnership and the Partnership Property shall be treated as strictly confidential by the parties hereto as required by law.

7. <u>Other Activities of the Investment Manager</u>. (a) The Investment Manager shall devote that amount of its time to the affairs of the Partnership that in its judgment the conduct of the Partnership's business, including the liquidation of the Partnership Property reasonably requires.

(b) The parties hereto acknowledge that:

(i) the Investment Manager and its affiliates may act as investment manager, sponsor or general partner for other customers, accounts and pooled investment vehicles and may give advice, and take action, with respect to any of those customers, accounts

and pooled investment vehicles which may differ from the advice given, or the timing or nature of action taken, with respect to the Partnership;

(ii) the Investment Manager, its affiliates and the members, partners, shareholders, officers, directors and employees thereof may engage in transactions or cause or advise other clients to engage in transactions which may differ from or be identical to the transactions advised upon or engaged in by the Investment Manager for the Partnership's account; and

(iii) the Investment Manager shall not have any obligation to engage in any transaction for the Partnership's accounts or to recommend any transaction to the Partnership which any of the Investment Manager, its affiliates or any of the members, partners, shareholders, officers, directors or employees thereof may engage in for their own accounts or the account of any other customer, except as otherwise required by applicable law.

(c) By reason of the investment advisory and other activities of the Investment Manager and its affiliates, the Investment Manager may acquire confidential information or be restricted from initiating transactions in certain securities. It is acknowledged and agreed that the Investment Manager shall not be free to divulge, or to act upon, any such confidential information with respect to the Investment Manager's performance of its responsibilities under this Agreement and that, due to such a restriction, the Investment Manager may not initiate a transaction that the Investment Manager otherwise might have initiated.

(d) Neither the Partnership nor any investor therein shall have the right to participate in any manner in any profits or income earned or derived by or accruing to the Investment Manager, its affiliates or the respective members, partners, directors, officers, employees or shareholders thereof from the conduct of any business other than the business of the Partnership or from any transaction in securities effected by the Investment Manager, its affiliates or the respective partners, members, directors, officers, employees or shareholders thereof for any account other than that of the Partnership.

8. <u>Exculpation and Indemnification of the Investment Manager</u>. (a) To the fullest extent permitted by law, none of the Investment Manager, its affiliates or the respective members, partners, officers, directors, employees, shareholders, agents and representatives thereof (collectively, the "<u>Covered Persons</u>") shall be liable to the Partnership for (i) any losses due to any act or omission by any Covered Person in connection with the conduct of the business of the Partnership that is determined by the Covered Person in good faith to be in or not opposed to the best interests of the Partnership, unless that act or omission constitutes willful misconduct, bad faith or gross negligence, (ii) any losses due to any action or omission of the Partnership, its limited partner(s) or Z-CDO Liquidation Fund GP, L.L.C., a Delaware Limited Liability Company (the "<u>General Partner</u>") or (iii) any losses due to any mistake, negligence, misconduct or bad faith of any broker or other agent of the Partnership selected by any Covered Person with reasonable care. To the extent that, at law or in equity, any Covered Person has duties (including fiduciary duties) and liabilities relating thereto to the Partnership, a Covered Person acting under this Agreement shall not be liable to the Partnership for its good faith reliance on the provisions of this Agreement.

(b)    Neither the Investment Manager nor any Covered Person shall have any personal liability to the Partnership, any limited partner or the General Partner, any shareholder thereof by reason of any change in United States federal, state or local or non-U.S. income tax laws, or in interpretations thereof, as they apply to the Partnership, any limited partner or the General Partner, whether the change occurs through legislative, judicial or administrative action.

(c)    Any Covered Person may consult with legal counsel or accountants selected by it and any act or omission by it on behalf of the Partnership or in furtherance of the business of the Partnership in good faith in reliance on and in accordance with the advice of such counsel or accountants shall be full justification for such act or omission, and the Investment Manager shall be fully protected in so acting or omitting to act if the counsel or accountants were selected with reasonable care.

(d)    To the fullest extent permitted by law, the Partnership shall indemnify and save harmless the Covered Persons from and against any and all claims, liabilities, damages, losses, costs and expenses, including amounts paid in satisfaction of judgments, in compromises and settlements, as fines and penalties and legal or other costs and expenses of investigating or defending against any claim or alleged claim, of any nature whatsoever, known or unknown, liquidated or unliquidated, that are incurred by any Covered Person and arise out of or in connection with the business of the Partnership or the performance by the Covered Person of any of its responsibilities hereunder, _provided_, that a Covered Person shall be entitled to indemnification hereunder only if the Covered Person acted in good faith and in a manner the Covered Person believed to be in or not opposed to the best interests of the Partnership and the Covered Person's conduct did not constitute willful misconduct, bad faith or gross negligence.

(e)    Expenses incurred by a Covered Person in defense or settlement of any claim that may be subject to a right of indemnification hereunder shall be advanced by the Partnership prior to the final disposition thereof; _provided_, that, such expenses shall be advanced by the Partnership only upon the execution and delivery by the Covered Person of a recourse promissory note, in a principal amount equal to the amount of the requested advance, to the Partnership, having a payment date of 10 Business Days following the final disposition of the action, suit or proceeding with respect to which such advance is being requested, which note, if not made by a natural person, shall be unconditionally guaranteed in its entirety as to the payment of principal by natural persons who in the aggregate hold at least 80% of the beneficial economic interests in such Covered Person in order to secure the return, following final disposition of the action, suit or proceeding with respect to which such advance is being requested, of any amount which represents an advance of expenses for which the Covered Person is not entitled to indemnification under this Agreement.

(f)    Whenever in this Agreement a Person is permitted or required to make a decision (i) in its "sole discretion," "sole and absolute discretion" or "discretion" or under a grant of similar authority or latitude, the Person shall be entitled to consider any interests and factors as it desires, including its own interests, or (ii) in its "good faith" or under another express standard, the Person shall act under such express standard and shall not be subject to any other or different standards imposed by this Agreement or any other agreement contemplated herein or by relevant provisions of law or in equity or otherwise.

(g) The right of any Covered Person to the indemnification provided herein shall be cumulative of, and in addition to, any and all rights to which such Covered Person may otherwise be entitled by contract or as a matter of law or equity and shall extend to such Covered Person's successors, assigns and legal representatives.

(h) Notwithstanding any of the foregoing to the contrary, the provisions of this Section 8 shall not be construed so as to relieve (or attempt to relieve) any Covered Person of any liability (including liability under the Federal securities laws which, under certain circumstances, impose liability even on persons that act in good faith) to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law, but shall be construed as to effectuate the provisions of this Section 8 to the fullest extent permitted by law.

9. Custodian. The securities owned by the Partnership will be held by one or more banks or brokers as the Investment Manager shall select, subject to the provisions of Section 3 hereof. The Investment Manager shall provide the Partnership's custodian as required with information relating to all transactions concerning the assets belonging to the Partnership.

10. Term and Termination. (a) This Agreement shall commence as of the date first set forth above and shall continue in force and effect until the first of the following occurs: (i) the liquidation of the Partnership Property and the final distribution of the proceeds of such liquidation pursuant to the Partnership Agreement, or (ii) the resignation by the Investment Manager upon sixty (60) days' prior written notice (or such shorter period as is acceptable to the Partnership) to the Partnership.

(b) In the event of termination, the provisions of Section 8, as well as this Section 10, shall survive.

(c) Subject to the foregoing, this Agreement shall inure to the benefit of and be binding upon the parties hereto and their successors and assigns.

11. Assignment. Except as contemplated in Section 3 hereof with respect to delegation by the Investment Manager of its obligations hereunder to third parties, each party hereto may assign this Agreement only with the consent of the other parties hereto.

12. Independent Contractor Status. The Investment Manager shall for all purposes be an independent contractor and not an agent or employee of the Partnership, and the Investment Manager shall have no authority to act for, represent, bind or obligate the Partnership except as specifically provided herein. This Agreement shall not be construed for any purposes to create any joint venture or partnership among the parties hereto.

13. Nonexclusivity. Nothing in this Agreement shall limit or restrict the right of the Investment Manager to engage in any other business or to render services of any kind to any other corporation, firm, individual or association.

14. Notices. (a) All notices, demands, requests or other communications contemplated by any provision of this Agreement must be in writing, and shall be made by hand delivery, certified mail, Federal Express or a similarly reputable overnight courier service,

facsimile or other electronic means to Z-CDO Liquidation Fund, L.P., c/o Anchorage Capital Group, L.L.C., 610 Broadway, 6th Floor, New York, New York 10012, Attn: Anne-Marie Kim, Fax No. (212) 432-4601, Email: akim@anchoragecap.com, but any party may designate a different address by a notice similarly given to the other party.

(b)    Any such notice or communication shall be deemed given: (i) when delivered by hand, if delivered on a business day; (ii) the next business day after delivery by hand if delivered by hand on a day that is not a business day; (iii) four business days after being deposited in the United States mail by certified mail; (iv) on the next business day after being deposited for next day delivery with Federal Express or by a similar reputable overnight courier service; (v) when receipt is confirmed, if faxed or delivered by other electronic means on a business day; and (vi) the next business day after the day on which receipt is confirmed, if faxed or delivered by other electronic means on a day that is not a business day.

15.    <u>Miscellaneous</u>.   (a)   This Agreement may be amended only upon the written consent of all parties hereto; <u>provided</u>, that any consent required to be obtained pursuant to the Partnership Agreement or the limited liability company agreement of the Investment Manager have been obtained; and, <u>provided</u>, <u>further</u>, that the Investment Manager may amend the provisions of this Agreement with respect to any issue, without the consent of the Partnership, to the extent necessary to comply with any applicable regulatory requirements, so long as any such amendment is not material and adverse to the Partnership.

(b)    This Agreement contains the entire agreement between the parties hereto.

(c)    This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

(d)    EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY AGREES THAT ANY LEGAL ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY AGREEMENTS OR TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY SHALL BE BROUGHT EXCLUSIVELY IN THE COURTS OF THE STATE OF NEW YORK OR OF THE UNITED STATES OF AMERICA FOR THE SOUTHERN DISTRICT OF NEW YORK AND HEREBY EXPRESSLY SUBMITS TO THE PERSONAL JURISDICTION AND VENUE OF SUCH COURTS FOR THE PURPOSES THEREOF AND EXPRESSLY WAIVES ANY CLAIM OF IMPROPER VENUE AND ANY CLAIM THAT SUCH COURTS ARE AN INCONVENIENT FORUM. EACH PARTY HEREBY IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OF ANY OF THE AFOREMENTIONED COURTS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO ITS ADDRESS SET FORTH HEREIN, SUCH SERVICE TO BECOME EFFECTIVE 10 DAYS AFTER SUCH MAILING.

(e)    EACH PARTY TO THIS AGREEMENT HEREBY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY ACTION OR LIABILITY DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.

EACH PARTY TO THIS AGREEMENT HEREBY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF ANY SUCH ACTION OR LIABILITY, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, AS APPLICABLE, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS CONTAINED HEREIN.

(f)     This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

(g)     If any term or provision hereof, or the application thereof to any person or circumstance, shall to any extent be contrary to any applicable exchange or government regulation or otherwise invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those as to which it is contrary, invalid, or unenforceable shall not be affected thereby and, to the extent consistent with the overall intent hereof as evidenced by this Agreement taken as a whole, shall be enforced to the fullest extent permitted by applicable regulation and law.

[Remainder of page intentionally left blank]

       IN WITNESS WHEREOF, each of the Investment Manager and the Partnership has executed this Agreement as of the date first above written.

                                  Z-CDO Liquidation Fund L.P.

                                  By:_____
                                      Name:
                                      Title:

                                ANCHORAGE CAPITAL GROUP, L.L.C.,
                                    a Delaware limited liability company

                                By:_____
                                      Name:
                                      Title: